**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of Texas
(State)

Case number *(if known)*: _____     Chapter __11__

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | J. C. Penney Company, Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | N/A |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 26-0037077 |

4. **Debtor's address**

**Principal place of business**

6501      Legacy Drive
Number    Street

Plano      Texas    75024
City      State    Zip Code

Collin County
County

**Mailing address, if different from principal place of business**

Number     Street

P.O. Box

City      State    Zip Code

**Location of principal assets, if different from principal place of business**

Number     Street

City      State    Zip Code

5. **Debtor's website** (URL)    http://www.jcpenney.com

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

---

Official Form 201        Voluntary Petition for Non-Individuals Filing for Bankruptcy       

| Debtor | **J. C. Penney Company, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

**4521 (Department Stores)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1). Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form**.**

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| | District | When | | Case number | |
|---|---|---|---|---|---|
| | | | MM/DD/YYYY | | |
| | District | When | | Case number | |
| | | | MM/DD/YYYY | | |

**10. Are any bankruptcy cases pending or being filed by a**

☐ No
☒ Yes.  Debtor  **See Rider 1**  Relationship  **Affiliate**

| Debtor | **J. C. Penney Company, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| business partner or an affiliate of the debtor? | District | **Southern District of Texas** | When | **05/15/2020** |
|---|---|---|---|---|
| List all cases. If more than 1, attach a separate list. | | Case number, if known | | MM / DD / YYYY |

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**

| _____ | | |
|---|---|---|
| Number | Street | |
| _____ | | |
| City | State | Zip Code |

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors[1]**

| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
|---|---|---|
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☒ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |

1   The Debtors' estimated assets, liabilities, and number of creditors noted here are provided on a consolidated basis.

| Debtor | **J. C. Penney Company, Inc.** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| | | ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| | | ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

| **16. Estimated liabilities** | ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
|---|---|---|---|---|---|---|
| | ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☒ | $1,000,000,001-$10 billion |
| | ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| | ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

| **17. Declaration and signature of authorized representative of debtor** | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    __05/15/2020__
                     MM/ DD / YYYY

**✗**    _/s/ Bill Wafford_                                 **Bill Wafford**
       Signature of authorized representative of debtor           Printed name

Title    **Authorized Signatory**

| **18. Signature of attorney** | **✗**    _/s/ Matthew D. Cavenaugh_         Date    __05/15/2020__ |
|---|---|

             Signature of attorney for debtor                     MM/DD/YYYY

**Matthew D. Cavenaugh**
Printed name

**Jackson Walker L.L.P.**
Firm name

**1401 McKinney Street, Suite 1900**
Number                Street

| **Houston** | **Texas** | **77010** |
|---|---|---|
| City | | |

| **(713) 752-4200** | mcavenaugh@jw.com |
|---|---|
| Contact phone | Email address |

| **24062656** | **Texas** |
|---|---|
| Bar number | State |

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Southern District of Texas**
(State)

Case number *(if known):* _____ Chapter ___11___

☐ Check if this is an
amended filing

**Rider 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of J. C. Penney Company, Inc.

| |
|---|
| J. C. Penney Company, Inc. |
| Future Source LLC |
| J. C. Penney Corporation, Inc. |
| J. C. Penney Direct Marketing Services LLC |
| J. C. Penney Export Merchandising Corporation |
| J. C. Penney International, Inc. |
| J. C. Penney Properties, LLC |
| J. C. Penney Purchasing Corporation |
| JCP Construction Services, Inc. |
| JCP Media, Inc. |
| JCP New Jersey, LLC |
| JCP Procurement, Inc. |
| JCP Real Estate Holdings, LLC |
| JCP Realty, LLC |
| JCP Telecom Systems, Inc. |
| JCPenney Puerto Rico, Inc. |
| JCPenney Services, LLC |
| jcpSSC, Inc. |

Official Form 201A (12/15)

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| J. C. PENNEY COMPANY, INC., | ) | Case No. 20-_____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11

If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is **1-15274**

The following financial data is the latest available information and refers to the debtor's condition on **March 31, 2020**

| | | | |
|---|---|---|---|
| Total assets | $ | 8,568,659,386 | |
| Total debts (including debts listed in 2.c., below) | $ | 8,032,699,093 | |
| Debt securities held by more than 500 holders | | **See comment** | |

| | | | | |
|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | **See comment** |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | **See comment** |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | **See comment** |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | **See comment** |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ _____ | **See comment** |

| | |
|---|---|
| Number of shares of preferred stock | **0**[1] |
| Number of shares of common stock | **320,981,685**[2] |

Comments, if any:  **J. C. Penney Company, Inc. does not and cannot know the precise number of beneficial holders of any of the debt securities it has issued and does not believe that any such securities are held by more than 500 holders.**

Brief description of debtor's business:  **J. C. Penny Company, Inc. is one of the nation's largest apparel and home retailers, offering stylish merchandise at incredible value from an extensive portfolio of private, exclusive, and national brands at over 850 stores and online.  J. C. Penney sells clothing for women, men, juniors, kids, and babies.  In addition, customers experience the customer services of approximately 90,000 associates across the globe.**

List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor:
**BlackRock, Inc.**

**The Vanguard Group**

---

[1]   As of February 1, 2020.

[2]   As of March 16, 2020.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| J. C. PENNEY COMPANY, INC., | ) | Case No. 20-_____ (___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

### LIST OF EQUITY SECURITY HOLDERS[1]

| Debtor | Equity Holders | Address of Equity Holder | Type of Equity Security[2] | Percentage of Equity Held |
|---|---|---|---|---|
| J. C. Penney Company, Inc. | BlackRock, Inc. | 55 East 52nd Street New York, New York 10055 | Common Stock | 13.85% |
| | The Vanguard Group | 100 Vanguard Boulevard Malvern, Pennsylvania 19355 | Common Stock | 5.02% |

---

[1]   This list reflects holders of five percent or more of J. C. Penney Company, Inc.'s common stock. This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure. By the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 50 Largest Unsecured Creditors, (II) Waiving the Requirement to File a List of Equity Security Holders, (III) Authorizing the Debtors to Redact Certain Personal Identification Information, (IV) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information, and (V) Granting Related Relief* filed contemporaneously herewith, the Debtor is requesting a waiver of the requirement under Bankruptcy Rule 1007 to file a list of all of its equity security holders.

[2]   Outstanding warrants are not reflected in ownership.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| J. C. PENNEY COMPANY, INC., | ) | Case No. 20-_____(___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### CORPORATE OWNERSHIP STATEMENT

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Type of Equity Security | Approximate Percentage of Shares Held |
|---|---|---|
| BlackRock, Inc. | Common Stock | 13.85% |

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor name | **J. C. Penney Company, Inc.,** *et al.* |
| United States Bankruptcy Court for the: | **Southern District of Texas** |
| Case number *(If known)*: | (State) |

q   Check if this is an
amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders                                                          12/15

A list of creditors holding the 50 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 50 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 1 | Wilmington Trust Global Capital Markets, 50 South Sixth Street, Suite 1290, Attention Of J. C. Penney Collateral Agency Administrator Minneapolis, MN 55402 | Hallie E. Field Tel: (612) 217-5644 Fax: 612.217.5651 Email: hfield@wilmingtontrust.com | Senior Notes | | | | $500,000,000.00 |
| 2 | Wilmington Trust Global Capital Markets, 50 South Sixth Street, Suite 1290, Attention Of J. C. Penney Collateral Agency Administrator Minneapolis, MN 55402 | Hallie E. Field Tel: (612) 217-5644 Fax: 612.217.5651 Email: hfield@wilmingtontrust.com | Senior Notes | | | | $388,262,000.00 |
| 3 | Wilmington Trust Global Capital Markets, 50 South Sixth Street, Suite 1290, Attention Of J. C. Penney Collateral Agency Administrator Minneapolis, MN 55402 | Hallie E. Field Tel: (612) 217-5644 Fax: 612.217.5651 Email: hfield@wilmingtontrust.com | Senior Notes | | | | $312,458,000.00 |
| 4 | Wilmington Trust Global Capital Markets, 50 South Sixth Street, Suite 1290, Attention Of J. C. Penney Collateral Agency Administrator Minneapolis, MN 55402 | Hallie E. Field Tel: (612) 217-5644 Fax: 612.217.5651 Email: hfield@wilmingtontrust.com | Senior Notes | | | | $105,256,000.00 |
| 5 | Nike Inc. One Bowerman Drive Beaverton, OR 97005 | Hilary Krane Tel: 503-671-6453 Email: media.relations@nike.com | Trade | | | | $32,067,049.43 |

---

[1] The Debtors reserve the right to assert setoff and other rights with respect to any of the claims listed herein.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 6 | Alfred Dunner Inc. 1333 Broadway, 11th Floor New York, NY 10018 | Peter J. Aresty Tel: (212) 944-6660 Email: customerservice@alfreddunner.net | Trade | | | | $14,211,811.48 |
| 7 | Byer California 66 Potrero Avenue San Francisco, CA 94103 | Joel Feldman Tel: 415-487-2672 Fax: 415-626-7865 Email: jfeldman@byer.com | Trade | | | | $12,607,412.28 |
| 8 | Oracle Credit Corporation 500 Oracle Pkwy, Suite 1 Redwood City, CA 94065 | Dorian E. Daley Tel: 650-506-7000 Fax: 650-506-7114 Email: dorian.daley@oracle.com | Trade | | | | $11,382,956.18 |
| 9 | Wilmington Trust Global Capital Markets, 50 South Sixth Street, Suite 1290, Attention Of J. C. Penney Collateral Agency Administrator Minneapolis, MN 55402 | Hallie E. Field Tel: (612) 217-5644 Fax: 612.217.5651 Email: hfield@wilmingtontrust.com | Senior Notes | | | | $9,796,000.00 |
| 10 | Siouni & Zar Corp/Kelly Grace 49 W 37th, Floor 10 New York, NY 10018 | Daniel Zar Tel: 212-704-9603 Email: kemaltonguc@dannyandnicole.com | Trade | | | | $8,465,197.78 |
| 11 | G.G. Int'L Mfg. Co., Ltd. 192 Jangchungdan-Ro Jung-Gu Seoul, Korea 100391 | David Kim Tel: 82-02-338-4706 Fax: 82-02-2071-4894 | Trade | | | | $7,744,899.49 |
| 12 | Adidas Distributing Adidas Village 5055 N. Greeley Avenue Portland, OR 97217 | Zion Armstrong Tel: 800-982-9337 Fax: 971-234-2450 Email: investor.relations@adidas.com | Trade | | | | $7,080,729.05 |
| 13 | Eclat Textile Co., Ltd. No 28 Wu Chyan Rd Wu Ku Ind Park New Taipe City, Taiwan 248 | Roger, J. C. Lo Tel: 886-2-2299-6000 Fax: 886-2-2299-1366 Email: rogerlo@eclat.com.tw | Trade | | | | $6,980,752.35 |
| 14 | Poong In Trading Co., Ltd. 18 F-20F Ace High Tech City B/D2 Dong 775, GyeongIn-ro, Yeongdeungpo-Gu Seoul, Korea | Paul Park Tel: 82-2-549-8313 Fax: 82-25-549-8310 | Trade | | | | $6,800,058.75 |
| 15 | Tata Consultancy Services Ltd. 3010 LBJ Freeway, Suite 715 Dallas, TX 75234 | Gautam Sitesh Tel: 91-22-6778-9595 Fax: 972-484-0450 Email: investor.relations@tcs.com | Trade | | | | $6,663,236.78 |
| 16 | Crystalclear Wealth Ltd. No 69, Xibei Rd, Banqiao Dist. Taiwan R.O.C. New Taipei City, Taiwan 22072 | Tony Wu Tel: 886-2-2686-9399 Fax: 886-2-2686-7811 Email: info@ccwealth.com.tw | Trade | | | | $6,264,328.59 |
| 17 | Haggar Clothing Co 1507 LBJ Freeway, Suite 100 Farmers Branch, TX 75234 | Jay Patel Tel: (214) 956-4639 Email: jay.patel@haggar.com | Trade | | | | $6,091,441.18 |

2

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 18 | The Lee Company, a VF Corp 400 N. Elm St. Greensboro, NC 27401 | Scott Baxter Tel: 336-424-6000 Email: IR@KontoorBrands.com | Trade | | | | $6,055,245.79 |
| 19 | Van Heusen Sportswear 200 Madison Avenue New York, NY 10016-3903 | Stefan Larsson Tel: 212-381-3500 Fax: 212-381-3950 Email: communications@pvh.com | Trade | | | | $5,749,916.64 |
| 20 | Nobland International Nobland B/D 49, Ogeumro 46GIL, Songpagu Seoul, Korea 05785 | Keith Kim Tel: 82-2-405-5700 | Trade | | | | $5,247,802.03 |
| 21 | Arya LLC DBA Perceptions 850 Paterson Plank Rd Secaucus, NJ 07094 | Haresh Tharani Tel: 201-243-2500 Email: info@tharancogroup.com | Trade | | | | $5,046,567.13 |
| 22 | Supreme International Corp 3000 NW 107th Ave Miami, FL 33172 | Torres Mitchell Tel: 305-592-2830 Fax: 305-594-2307 Email: info@pery.com | Trade | | | | $5,016,739.76 |
| 23 | Breaking Waves Inc 1441 Broadway New York, NY 10018 | Billy Zuckerman Tel: 646-569-6001 Email: info@breakingwaves.com | Trade | | | | $4,988,939.87 |
| 24 | Laws Textile Industrial Ltd Room 3301-05 33/F Laws Commercial Plaza 788 Cheung Sha Wan Rd, Lai Chi Kok Hong Kong, Hong Kong | Bosco Law Tel: 852-2371-11888 Fax: 852-2786-2406 Email: info@lawsgroup.com | Trade | | | | $4,806,666.39 |
| 25 | Kasper Group LLC 1412 Broadway New York, NY 10018 | Gregg I. Marks Tel: 212-354-4311 Email: inquiries@kasper.com | Trade | | | | $4,751,298.39 |
| 26 | Bee Darlin 1875 E 22nd St Los Angeles, CA 90058 | Steve Namm Tel: 213-749-2116 Email: steve@beedarlin.com | Trade | | | | $4,677,845.89 |
| 27 | Izod 200 Madison Avenue New York, NY 10016-3903 | Stefan Larsson Tel: 866-378-9545 Email: communications@pvh.com | Trade | | | | $4,628,066.26 |
| 28 | The William Carter Co 3438 Peachtree Rd Ste 1800 Atlanta, GA 30326-1554 | Michael Casey Tel: 678-791-1000 Email: contactus@carters.com | Trade | | | | $4,616,591.78 |
| 29 | D3 LLC 75 Marcus Dr Melville, NY 11747 | Louis Dupere Tel: 631-454-6600 | Trade | | | | $4,444,052.91 |
| 30 | Vanity Fair Brands LP 8505 E. Orchard Road Greenwood Village, CO 80111 | Steve Rendle Tel: (251) 743-6625 Email: ir@vfc.com | Trade | | | | $4,412,713.92 |
| 31 | Jordache Enterprises Inc 1400 Broadway New York, NY 10018 | Charles Flores Tel: 212-944-1330 Email: cflores@jordache.com | Trade | | | | $4,211,182.68 |
| 32 | U-Knits, Inc. R#1504 Mario Tower 28 Digital-Ro 30-Gil Guro-Gu Seoul, Korea | Jae-Young Yoo Tel: 02.2059.2400 Fax: 02.863.6143 Email: uknits@u-knits.com | Trade | | | | $4,101,282.81 |
| 33 | Epic Garments DWC -LLC Dubai World Central Bldg E Office No E-4-O413 Dubai, United Arab Emirates | Sunil Daulatram Daryanani Tel: 971-4406-9900 Fax: 852-2345 8558 Email: info@epichk.com | Trade | | | | $4,097,288.90 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 34 | Briggs New York Corp<br>13071 E Temple Ave<br>City of Industry, CA 91746 | Angela Smith<br>Tel: 626-934-4122<br>Email:<br>angela.smith@kellwood.com | Trade | | | | $4,053,144.50 |
| 35 | Tharanco Dress Group LLC<br>134 W. 37th Street<br>New York, NY 10018 | Michael Setola<br>Tel: 201-243-2500<br>Email: info@tharancogroup.com | Trade | | | | $3,966,379.14 |
| 36 | Footwear Unlimited Inc<br>99 Larkin Williams Ind Ct<br>Fenton, MO 63026 | Nicholas Licavoli<br>Tel: (636) 680-2655<br>Email:<br>nickl@footwearunlimited.com | Trade | | | | $3,949,943.70 |
| 37 | Fritzi California<br>13071 E Temple Ave<br>City of Industry, CA 91746 | Angela Smith<br>Tel: (314) 851-8176<br>Email:<br>angela.smith@kellwood.com | Trade | | | | $3,905,189.67 |
| 38 | Sun Diamond DBA Sun Source<br>255 West 36th 7th Floor<br>New York, NY 10018 | Ed Yakubovich<br>Tel: 212-714-2702<br>Email:<br>eyakubovich@sunsoucrejewelry.com | Trade | | | | $3,768,246.69 |
| 39 | Revise Clothing Inc<br>20 Henry St<br>Teterboro, NJ 07608-1102 | Mark Levy<br>Tel: 201-727-9339<br>Email:<br>marketing@vanillastarjeans.com | Trade | | | | $3,743,947.33 |
| 40 | Gulf Textile Sourcing Fze<br>Saif Desk Q1 06 048B<br>Sharjah Airport International Free Zone<br>Sharjah, United Arab Emirates 61128 | Tel: 971-55-295-2792<br>Email: marketing@gulftex.ae | Trade | | | | $3,715,064.99 |
| 41 | OMD USA LLC<br>225 N Michigan Ave<br>Chicago, IL 60601 | Paul Bocchino<br>Tel: 212 5907277<br>Email: paul.bocchino@omd.com | Trade | | | | $3,642,567.51 |
| 42 | In Mocean Group LLC<br>463 Seventh Ave., 21th Floor<br>New York, NY 10118 | Jerry Harary<br>Tel: 212-944-0317<br>Fax: 212-944-7667 | Trade | | | | $3,491,743.16 |
| 43 | Elkay Overseas India<br>5/66, K.C. House Padam Singh Road<br>Delhi, India 110 005 | Narendera Agarwal<br>Tel: 91-25-789-729<br>Email: info@elkayoverseas.com | Trade | | | | $3,475,942.14 |
| 44 | Tal Global Alliances Limited<br>3/F Tal Bldg 49 Austin Rd<br>Kowloon, Hong Kong | Roger Lee<br>Tel: 852-2738-6211<br>Email: info@talapparel.com | Trade | | | | $3,470,072.53 |
| 45 | Mainstream Swimsuits Inc.<br>610 Uhler Road<br>Easton, PA 18040 | Dawn Finlayson<br>Tel: (484) 373-3600<br>Email: dawn@swimusa.com | Trade | | | | $3,465,999.39 |
| 46 | Manhattan Beachwear<br>10700 Valley View Street<br>Cypress, CA 90630 | Cindy Elenes<br>Tel: 714-892-7354<br>Fax: 714-799-5381<br>Email: celenes@mbwswim.com | Trade | | | | $3,419,820.13 |
| 47 | Richline Group Inc.<br>1385 Broadway<br>New York, NY 10018 | Dave Meleski<br>Tel: 800-966-8800<br>Fax: 914-699-2335<br>Email:<br>contactus@richlinegroup.com | Trade | | | | $3,403,409.23 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 48 | The Van Heusen Company 200 Madison Avenue New York, NY 10016 | Stefan Larsson Tel: 212-381-3500 Email: communications@pvh.com | Trade | | | | $3,343,471.19 |
| 49 | Studio Ray LLC 512 Fashion Ave., 19th Floor New York, NY 10018 | Gladys Mayers Tel: 212-354-8990 Email: info@studioray.net | Trade | | | | $3,277,154.35 |
| 50 | New Balance Athletic Shoe, Inc. 20 Guest St. Boston, MA 02135-2088 | Robyn Noble Tel: (617)-746-2420 Email: robyn.noble@newbalance.com | Trade | | | | $3,165,729.98 |

## J. C. PENNEY COMPANY, INC.
## <u>SECRETARY'S CERTIFICATE</u>

May 15, 2020

The undersigned, Brandy L. Treadway, as Secretary of J. C. Penney Company, Inc. (the "<u>Company</u>") hereby certifies, solely in her capacity as Secretary of the Company and not in any individual capacity, as follows:

1.  I am the duly qualified and elected Secretary of the Company and, as such, I am familiar with the facts herein certified and I am duly authorized to certify the same on behalf of the Company.

2.  Attached hereto is a true, complete, and correct copy of the resolutions of the Board of Directors of the Company, duly adopted at a properly convened meeting of the Board of Directors on May 15, 2020 (the "<u>Resolutions</u>").

3.  Since their adoption, the Resolutions have not been modified, rescinded, or amended and are in full force and effect as of the date hereof, and the Resolutions are the only resolutions adopted by the Board of Directors relating to the authorization and ratification of all corporate actions taken in connection with the matters referred to therein.

[Signature page follows]

IN WITNESS WHEREOF, I have hereunto set my hand on behalf of the Company as of the date hereof.

J. C. Penney Company, Inc., with respect to its Board of Directors

By: _Brandy C. Treadway_____

Name:   Brandy L. Treadway
Title:    Senior Vice President, General Counsel and Secretary

**RESOLUTIONS OF**
**THE BOARD OF DIRECTORS**
**OF J. C. PENNEY COMPANY, INC.**

**May 15, 2020**

## RESTRUCTURING SUPPORT AGREEMENT

**WHEREAS**, the Board of Directors (the "Board"), of J. C. Penney Company, Inc., a Delaware corporation (the "Company") reviewed and considered (i) the presentations by the Company's management ("Management") on May 15, 2020, and the recommendation by Management that the Company enter into that certain restructuring support agreement (in such form as authorized and executed by any Authorized Signatory, with such authorization as evidenced by the execution and delivery by any such Authorized Signatory, the "Restructuring Support Agreement"), (ii) the presentations by the Advisors regarding the liabilities and liquidity of the Company, the strategic alternatives available to it, and the impact of the foregoing on the Company's business, (iii) the information and advice previously provided to and reviewed by the Board, and (iv) the related matters reported on at this meeting and other previous meetings of the Board;

**WHEREAS**, the Board has had the opportunity to consult with Management and the Company's financial and legal advisors (the "Advisors") and fully consider each of the strategic alternatives available to the Company;

**WHEREAS**, the Management is continuing to negotiate the Restructuring Support Agreement with the Company's stakeholders, with the terms of such Restructuring Support Agreement, to be substantially consistent with the terms set forth in the presentations by the Management; and

**WHEREAS**, the Restructuring Support Agreement will provide that it can be terminated if the Board determines, after consulting with counsel, that proceeding with any of the restructuring contemplated by the Restructuring Support Agreement would be inconsistent with applicable law or the Board's fiduciary duties.

**NOW, THEREFORE, BE IT RESOLVED**, that it is desirable and in the best interests of the Company, its stakeholders, its creditors, and other parties in interest, to enter into the Restructuring Support Agreement, and that the Company's performance of its obligations under the Restructuring Support Agreement, and all other exhibits, schedules, attachments, and ancillary documents or agreements related thereto, hereby is, in all respects, authorized and approved;

**FURTHER RESOLVED**, that Management is hereby authorized and directed to take all actions necessary or advisable to negotiate and finalize the Restructuring Support Agreement and, subject to receiving sufficient consents from the Consenting Stakeholders (as defined in the Restructuring Support Agreement), enter into and perform the Restructuring Support Agreement, and the restructuring contemplated thereunder; and

**FURTHER RESOLVED**, that any of the Management and their respective designees or delegates (collectively, the "Authorized Signatories") shall be, and each of them individually hereby is, authorized for and on behalf of the Company to take all actions (including, without limitation, to negotiate and execute any agreements, documents, certificates, supplemental agreements and instruments) necessary or advisable to finalize the Restructuring Support Agreement and, subject to receiving sufficient consents from the Consenting Stakeholders (as defined in the Restructuring Support Agreement), to enter into the Restructuring Support Agreement, and to perform all the transactions contemplated thereby, that in the judgment of the applicable Authorized Signatory, are necessary or appropriate to effectuate and carry out the purposes and intent of the foregoing resolutions (such determination to be conclusively evidenced by the taking of such action or execution thereof).

## CHAPTER 11 FILING

**WHEREAS** the Board has considered certain materials presented by Management and Advisors, including, but not limited to, materials regarding the liabilities and obligations of the Company, its liquidity, strategic alternatives available to it, and the effect of the foregoing on the Company's business, and has had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Company; and

**WHEREAS** the Board has had the opportunity to consult with Management and the Advisors and consider each of the strategic alternatives available to the Company.

**NOW, THEREFORE, BE IT RESOLVED** that in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (such voluntary petition, and the voluntary petitions to be filed by the Company's affiliates, collectively, the "Chapter 11 Cases") under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in a court of proper jurisdiction (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and

**FURTHER RESOLVED** that the Authorized Signatories, acting alone or with one or more other Authorized Signatories be, and each of them hereby is authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, objections, replies, applications, papers, or documents as necessary or advisable to commence the Chapter 11 Cases and obtain chapter 11 relief, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's businesses.

## DIP CREDIT AGREEMENT AND ADEQUATE PROTECTION

**WHEREAS**, reference is made to that certain Backstop Commitment Letter, dated on or around the date hereof (as amended, restated, amended and restated, supplemented, extended or otherwise modified from time to time, the "Backstop Commitment Letter"), among J. C. Penney Corporation, Inc., a Delaware corporation (the "Borrower") and the DIP Lenders identified therein

relating to a debtor-in-possession credit agreement referred to therein (together with all exhibits, schedules, and annexes thereto, as amended, amended and restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement") to be entered into by and among, *inter alios*, the Borrower, J. C. Penney Company, Inc., a Delaware corporation ("Holdings"), the lenders party thereto from time to time (the "DIP Lenders"), and the administrative agent and collateral agent for the lenders (in such capacities, the "Agent");

**WHEREAS**, the obligation of the DIP Lenders to make certain extensions of credit is subject to the Borrower and each Guarantor (collectively, the "DIP Credit Parties") having satisfied certain conditions described in the Backstop Commitment Letter;

**WHEREAS**, Management and the Advisors have negotiated the terms of the Backstop Commitment Letter regarding the DIP Credit Agreement, the key terms of which have been discussed with the Board; and

**WHEREAS**, the Board of the Company has determined that the transactions contemplated by the Backstop Commitment Letter and the DIP Credit Agreement are in the best interest of the Company and that it is in the best interest of such DIP Credit Party to (i) execute and deliver the Backstop Commitment Letter and the DIP Credit Agreement and any other document or agreement to which it is contemplated to become a party pursuant to the Backstop Commitment Letter, the DIP Credit Agreement and the other DIP Documents (as defined below) and (ii) authorize the Authorized Signatories of the Company to take any and all actions as any such Authorized Signatory may deem appropriate to effect the transactions contemplated by the Backstop Commitment Letter, the DIP Credit Agreement and the DIP Documents.

**NOW, THEREFORE, BE IT RESOLVED**, that in order to use and obtain the benefits of (a) the DIP Credit Agreement and (b) the Cash Collateral (as defined in the Cash Collateral Order), and in accordance with section 363 of the Bankruptcy Code, the Company will grant certain liens and claims, and provide adequate protection to (x) the DIP Secured Parties to secure the obligations of the DIP Credit Parties under the DIP Credit Agreement (collectively, the "DIP Obligations") as documented in a proposed Final DIP Order (as defined in the DIP Term Sheet) and (y) the Prepetition Secured Parties (as defined in the Cash Collateral Order (as defined in the DIP Term Sheet)) to secure the Prepetition Secured Obligations (as defined in the Cash Collateral Order) as documented in the proposed Cash Collateral Order;

**FURTHER RESOLVED**, that the form, terms and provisions of the Backstop Commitment Letter, the DIP Credit Agreement, the DIP Order, the Cash Collateral Order and the form, terms and provisions of each of the instruments and documents listed below to which the Company is or will be a party (or to which it shall otherwise be subject) (collectively with the DIP Credit Agreement, the DIP Order, and the Cash Collateral Order, the "DIP Documents"), be, and hereby are, in all respects approved; and further resolved, that the Company's performance of its DIP Obligations under the DIP Credit Agreement and the other DIP Documents, including the borrowings thereunder, the guaranteeing of the obligations of the other DIP Credit Parties and the grant of a security interest in the assets of the Company be, and hereby are, in all respects, approved; and further resolved, that each of the Authorized Signatories, acting alone or with one or more other Authorized Signatories be, and hereby is, authorized and empowered to execute and deliver (including by facsimile, electronic, or comparable method) the DIP Credit Agreement each

of the other DIP Documents to which it will be a party, and each of the instruments and documents contemplated thereby, in the name and on behalf of the Company, on behalf of itself or its subsidiaries, as applicable, under its corporate seal or otherwise, with such changes therein as shall be approved by the Authorized Signatory executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from the form presented to the Board of the Company:

    (a)     the DIP Credit Agreement;

    (b)     the DIP Pledge and Security Agreement; and

    (c)     such other documents, instruments, certificates, petitions, motions and other papers as may be reasonably requested by the Agent, required by the DIP Order or the Cash Collateral Order, or contemplated by the Backstop Commitment Letter, DIP Credit Agreement or any other DIP Document;

**FURTHER RESOLVED**, that the Company will obtain benefits from (a) the use of collateral, including Cash Collateral, which is security for the Prepetition Secured Parties under the Prepetition Credit Agreements (each as defined in the Cash Collateral Order), and (b) the incurrence of debtor-in-possession financing obligations pursuant to the DIP Credit Agreement and other DIP Documents or arising from each DIP Order, which are necessary and convenient to the conduct, promotion and attainment of the business of the Company;

**FURTHER RESOLVED**, that in order to use and obtain the benefits of the (a) DIP Financing and (b) Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Company will provide the Adequate Protection Obligations (as defined in the Cash Collateral Order), as documented in proposed interim and final orders and submitted for approval to the Bankruptcy Court;

**FURTHER RESOLVED**, that the Company, as a debtor and a debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations, and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "DIP Transactions"), including granting liens on its assets to secure such obligations;

**FURTHER RESOLVED**, that the granting of security interests by the Company in all property now or hereafter owned by the Company as contemplated by the DIP Credit Agreement, the DIP Order, the Cash Collateral Order, the other DIP Documents and any other agreements, documents or filings that the Agent or any Prepetition Secured Party determines are necessary, appropriate, or desirable pursuant to the terms of the DIP Documents be, and hereby are, in all respects, authorized and approved; and further resolved, that the Agent or any Prepetition Secured Party is authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral (as defined in the DIP Credit Agreement) or the Adequate Protection Collateral (as defined in the Cash Collateral Order) without the signature of the Company in such form and in such offices as the Agent or any Prepetition Secured Party determines appropriate; the Agent and each Prepetition Secured Party is authorized to use the

collateral description "all personal property of debtor" or "all assets of debtor" or any similar description in any such financing statements;

**FURTHER RESOLVED**, that each of the Authorized Signatories of the Company is authorized and empowered in the name of, and on behalf of, the Company to file or to authorize the Agent or any Prepetition Secured Party to file any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the Agent or any Prepetition Secured Party deems necessary or appropriate to perfect any lien or security interest granted under the DIP Order, or the Cash Collateral Order including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the Agent or any Prepetition Secured Party may reasonably request to perfect the security interests of the Agent or any Prepetition Secured Party under the DIP Order or the Cash Collateral Order, as applicable;

**FURTHER RESOLVED**, that the Authorized Signatories of the Company, acting alone or with one or more other Authorized Signatories, be, and each of them hereby is, authorized, directed, and empowered in the name and on behalf of the Company, as a debtor and a debtor in possession, to guarantee the DIP Obligations and Adequate Protection Obligations under the DIP Credit Agreement, the DIP Order, the Cash Collateral Order and the other DIP Documents (as applicable) on behalf of itself or on behalf of its subsidiaries, as applicable, to assign, transfer, pledge, and grant, or to continue to assign, transfer, pledge, and grant, to the Agent, for the ratable benefit of the respective or applicable Secured Parties, a security interest in all or substantially all the assets of the Company, as collateral security for the prompt and complete payment and performance when due of the DIP Obligations and Adequate Protection Obligations under the DIP Credit Agreement, the DIP Order, the Cash Collateral Order, and the other DIP Documents (as applicable) to which the Company is a party (or otherwise subject) and to take or cause to be taken any such actions as may be necessary, appropriate or desirable to cause the Company to create, perfect and maintain a security interest in its property or assets constituting Collateral and/or Adequate Protection Collateral as described or contemplated in the applicable DIP Documents;

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all such further actions including, without limitation, to pay all fees and expenses in accordance with the terms of the DIP Documents, to arrange for and enter into supplemental agreements, instruments, certificates, or documents relating to the transactions contemplated by the DIP Credit Agreement, the DIP Order, the Cash Collateral Order or any of the DIP Documents and to execute and deliver all such supplemental agreements, instruments, certificates, or documents in the name and on behalf of the Company under its corporate seal or otherwise, which shall in their sole judgment be necessary, proper, or advisable in order to perform the Company's DIP Obligations and/or Adequate Protection Obligations under or in connection with the DIP Credit Agreement, the DIP Order, the Cash Collateral Order or any of the DIP Documents (as applicable) and the transactions contemplated therein, and to carry out fully the intent of the foregoing resolutions, in such form and with such terms as shall be approved by the

Authorized Signatory executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof;

**FURTHER RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized and empowered to execute and deliver any amendments, amendment and restatements, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Credit Agreement, the DIP Order, the Cash Collateral Order, or any of the DIP Documents that shall, in their sole judgment, be necessary, proper, or advisable, in such form and with such terms as shall be approved by the Authorized Signatory executing the same, with such execution by said Authorized Signatory to constitute conclusive evidence of his or her approval of the terms thereof;

**FURTHER RESOLVED**, that for all transactions authorized above, the Authorized Signatories are authorized to open an account or accounts with such third parties as they deem necessary or desirable for the purpose of engaging in such transactions, and the other party to such transactions is authorized to act upon any verbal or written orders and instructions from the Authorized Signatories in connection with such accounts and transactions;

**FURTHER RESOLVED**, that each of the Authorized Signatories of the Company be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions as the sole shareholder, partner, general partner, sole member, member, managing member, sole manager, manager, or director of each applicable subsidiary of the Company, if any, whether existing now or in the future, in each case, as such Authorized Signatory shall deem necessary or desirable, including, without limitation, the authorization of resolutions and agreements necessary to authorize the execution, delivery, and performance pursuant to the DIP Documents (including, without limitation, certificates, affidavits, financing statements, notices, reaffirmations, and amendments and restatements thereof or relating thereto) as may be necessary, appropriate, or convenient to effectuate the purposes of the transactions contemplated herein; the performance of any such further act or thing and the execution of any such document or instrument by any of the Authorized Signatories of the Company pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Company in every respect;

**FURTHER RESOLVED**, that all acts and actions taken by the Authorized Signatories prior to the date hereof with respect to the transactions contemplated by the DIP Credit Agreement, the DIP Order, the Cash Collateral Order or any of the DIP Documents be, and hereby are, in all respects confirmed, approved, and ratified;

**FURTHER RESOLVED**, that the signature of any Authorized Signatory of the Company shall be conclusive evidence of the authority of such Authorized Signatory to execute and deliver the documents to which the Company is a party; the authority granted herein shall apply with equal force and effect to any successors-in-office of the Authorized Signatories herein identified; and

**FURTHER RESOLVED**, that all capitalized terms used in the resolutions in this section entitled "**DIP CREDIT AGREEMENT AND ADEQUATE PROTECTION**" and not otherwise defined herein shall have the meanings ascribed to such terms in the Backstop

Commitment Letter, the DIP Term Sheet (as defined in the Backstop Commitment Letter), the DIP Credit Agreement, the DIP Order, or the Cash Collateral Order, as applicable.

**RETENTION OF PROFESSIONALS**

**NOW, THEREFORE, BE IT FURTHER RESOLVED** that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the following professionals on behalf of the Company: (i) the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, as general bankruptcy counsel, (ii) the law firm of Jackson Walker L.L.P., as co-bankruptcy counsel, (iii) Lazard Frères & Co. LLC, as financial advisor, (iv) AlixPartners, LLP, as restructuring advisor, (v) Prime Clerk LLC, as notice and claims agent, (vi) KPMG LLP, as tax restructuring advisor, (vii) Gordon Brothers Retail Partners, LLC, as store closing consultant, (viii) B. Riley Real Estate, LLC and Cushman & Wakefield U.S., Inc., as co-real estate consultants and (ix) any other legal counsels, accountants, financial advisors, restructuring advisors or other professionals the Authorized Signatories deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and applicable law (including, but not limited to, the law firms filing any pleadings and responses); and in connection therewith, each of the Authorized Signatories be, and hereby is authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements and to cause to be filed appropriate applications for authority to reach such services.

**FURTHER RESOLVED**, that all acts and deeds previously performed by any of the officers of the Authorized Signatories, as may be applicable, prior to the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed and approved in all respects as the authorized acts and deeds of the Authorized Signatories, as the case may be.

**GENERAL**

**NOW, THEREFORE, BE IT RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates) be, and they hereby are, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action to: execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents; and pay all expenses, including but not limited to filing fees, in each case as in such officer's or officers' judgment, shall be necessary, advisable, or desirable to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**FURTHER RESOLVED,** that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice;

**FURTHER RESOLVED**, that all acts, actions and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were

taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement or certificate has been specifically authorized in advance by resolution of the Board; and

**FURTHER RESOLVED**, that each of the Authorized Signatories (and their designees and delegates) be and hereby is authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable judgment as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein.

\*       \*       \*       \*       \*

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | J. C. Penney Company, Inc. |
| United States Bankruptcy Court for the: | Southern District of Texas |
| | (State) |
| Case number (If known): | |

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐ *Schedule H: Codebtors (Official Form 206H)*

☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐ Amended Schedule

☒ *Chapter 11 or 9 Cases: List of Creditors Who Have the 50 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒ Other document that requires a declaration_____ **List of Equity Security Holders and Corporate Ownership Statement** _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on

| 05/15/2020 | ☒ */s/ Bill Wafford* |
|---|---|
| MM/ DD/YYYY | Signature of individual signing on behalf of debtor |
| | **Bill Wafford** |
| | Printed name |
| | **Authorized Signatory** |
| | Position or relationship to debtor |

Official Form 202                    Declaration Under Penalty of Perjury for Non-Individual Debtors