**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| J. C. PENNEY COMPANY, INC., *et al.*,[1] | ) | Case No. 20-20182 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | (Emergency Hearing Requested) |
|  | ) |  |
|  | ) | **Re:  Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING**
**DEBTORS TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO THE**
**PREPETITION SECURED PARTIES, AND (III) SCHEDULING**
**A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)**

1.     Upon the motion,[2] dated May 15, 2020, [Docket No. [●]] (the "<u>Motion</u>"),[3] of J. C.

Penney Company, Inc. ("<u>J. C. Penney</u>") and its affiliated debtors, each as debtor and debtor in

possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>"), for entry of

interim and final orders (this "<u>Interim Order</u>" and a "<u>Final Order</u>," respectively) under sections

105, 361, 362, 363, 503, and 507 of title 11 of the United States Code (as amended, the

"<u>Bankruptcy Code</u>"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure

(as amended, the "<u>Bankruptcy Rules</u>"), rules 4002-1 and 9013-1 of the Bankruptcy Local Rules

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors'
proposed claims and noticing agent at http://cases.primeclerk.com/JCPenney.  The location of Debtor
J. C. Penney Company, Inc.'s principal place of business and the Debtors' service address in these chapter 11
cases is 6501 Legacy Drive, Plano, Texas 75024.

[2]     The term and provisions of this Interim Order remain subject to ongoing negotiations and discussions among
the parties, and each party reserves its respective rights in connection therewith.

[3]     All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>") and the Complex Case

Procedures, seeking:

(a)     authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503
        and 507 of the Bankruptcy Code, to (a) use the Cash Collateral (as defined
        in paragraph 5(f) below), and all other Prepetition Collateral (as defined in
        paragraph D.5(d) below); and (b) provide adequate protection to the
        Prepetition Secured Parties (as defined below) under the ABL Credit
        Agreement, the Term Loan Agreement, and the First Lien Notes Indenture,
        as applicable (each as defined below and collectively, the
        "<u>Credit Agreements</u>");

(b)     subject to entry of the Final Order, authorization to grant adequate
        protection liens on the proceeds and property recovered in respect of the
        Debtors' claims and Causes of Action[4] (but not on the actual claims and
        Causes of Action) arising under sections 544, 545, 547, 548, 549, an 550 of
        the Bankruptcy Code or any other state or federal law (collectively,
        the "<u>Avoidance Actions</u>");

(c)     subject to entry of the Final Order, the waiver by the Debtors of any right
        to surcharge against the Prepetition Collateral or the Adequate Protection
        Collateral (as defined in paragraph 18 below) pursuant to section 506(c) of
        the Bankruptcy Code or any other applicable principle of equity or law;

(d)     to schedule, pursuant to Bankruptcy Rule 4001 and the Complex Case
        Procedures, an interim hearing (the "<u>Interim Hearing</u>") on the Motion to be
        held before this Court to consider entry of this Interim Order (a) authorizing
        the Debtors to use the Cash Collateral (as defined below) and the other

---

[4]     As used in this Interim Order, "Causes of Action" means any action, Claim, cause of action, controversy,
        demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment,
        account, defense, offset, power, privilege, and license of any kind or character whatsoever, whether known,
        unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or
        unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether
        arising before, on, or after the Closing Date, in contract or in tort, in law (whether local, state, or federal U.S.
        or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.
        For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment
        and any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) any Claim based
        on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary
        duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or
        federal or non-U.S. law or breach of any duty imposed by law or in equity, including securities laws,
        negligence, and gross negligence; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code
        or similar local, state, or federal U.S. or non-U.S. law; (d) any Claim or defense including fraud, mistake,
        duress, and usury, and any other defenses set forth in section 558 of title 11 of the United States Code; (e)
        any state or foreign law pertaining to actual or constructive fraudulent transfer, fraudulent conveyance, and
        (f) any "lender liability" or equitable subordination claims or defenses.

Prepetition Collateral subject to the terms and conditions hereof; and (b) granting adequate protection to the Prepetition Secured Parties;

(e) to schedule, pursuant to Bankruptcy Rule 4001 and the Complex Case Procedures, a final hearing (the "Final Hearing") for this Court to consider entry of the Final Order in form and substance reasonably acceptable to the Prepetition Secured Parties, authorizing the Debtors on a final basis to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms and conditions of the Final Order and authorizing and approving the relief requested in the Motion to become effective pursuant to the Final Order; and

(f) waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)).

The Interim Hearing having been held by this Court on May 16, 2020; and upon the record made by the Debtors at the Interim Hearing (including, without limitation, the First Day Declaration and the Mesterharm Declaration); and this Court having heard and resolved or overruled all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

**A.    The Motion.**

2.    The Motion is granted on an interim basis to the extent set forth herein.  Any objection to, or reservation of rights regarding, the entry of this Interim Order to the extent not withdrawn or resolved is hereby overruled on the merits.

**B.    Jurisdiction.**

3.    This Court has core jurisdiction over the Cases commenced on May 15, 2020 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.    Notice.**

4.    Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on the following parties or their counsel:  (a) the United States Trustee for the Southern District of Texas, Houston Division (the "U.S. Trustee"); (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the ABL Agent, and Otterbourg P.C., 230 Park Avenue - 30th Floor, New York, New York 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq., as counsel thereto; (d) the Term Loan Administrative Agent, and counsel thereto  (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 5.875% first lien secured notes due 2023, (ii) 8.625% second lien secured notes due 2025; (iii) 5.65% unsecured notes due 2020, (iv) 7.125% unsecured debentures due 2023, (v) 6.90% unsecured debentures due 2026, (vi) 6.375% unsecured notes due 2036, (vii) 7.40% unsecured debentures due 2037, and (viii) 7.625% unsecured debentures due 2097; (f) Milbank LLP, as counsel to that ad hoc group of certain First Lien Notes Secured Parties and Term Loan Credit Parties (the "Milbank First Lien Group"); (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b), (c) and (d) and the Bankruptcy Local Rules.

**D.**     **Debtors' Stipulations.**

5.     Without prejudice to the rights of any other party (but subject to the limitations thereon contained in sections X and Y of this Interim Order) the Debtors admit, stipulate, and agree that:

    (a)     **ABL Credit Facility:**

        (i)     **ABL Credit Agreement:** J. C. Penney Corporation, Inc., and each of the other borrowers from time to time party thereto (collectively, the "<u>ABL Borrowers</u>"), the lenders party thereto (the "<u>ABL Lenders</u>"), and Wells Fargo Bank, National Association ("<u>Wells Fargo</u>"), as administrative agent and collateral agent (the "<u>ABL Agent</u>" and together with the ABL Lenders and the other "Secured Parties" identified therein, the "<u>ABL Secured Parties</u>") are parties to that certain Credit Agreement, dated as of June 20, 2014 (as amended by that certain Amendment No. 1 to Credit Agreement, dated as of December 10, 2015, that certain Amendment No. 2 to Credit Agreement, dated as of June 20, 2017, that certain Amendment No. 3 to Credit Agreement, dated as of March 8, 2018, and as may be further amended, restated, modified or supplemented from time to time prior to the Petition Date, the "<u>ABL Credit Agreement</u>"). The ABL Credit Agreement provides for a $2.35 billion revolving credit facility (subject to a borrowing base composed primarily of accounts receivable, credit card receivables and inventory), including a letter of credit sublimit of $750 million, with a maturity date of June 20, 2022 (the "<u>ABL Facility</u>").

        (ii)     **ABL Obligations:** As of the Petition Date, the Loan Parties (as defined in the ABL Credit Agreement, the "<u>ABL Loan Parties</u>") were jointly and severally liable and indebted to the ABL Agent and the ABL Lenders in the aggregate principal amount of not less than $1.179 billion in Revolving Loans (as defined in the ABL Credit Agreement) plus $213 million in aggregate face amount of undrawn letters of credit under the ABL Facility, plus any other amounts due and payable under the "Loan Documents" as defined in the ABL Credit Agreement (the "<u>ABL Loan Documents</u>"), including, without limitation, all interest accrued and unpaid or otherwise accruing thereon, reimbursement obligations (contingent or otherwise), fees, costs, certain expenses (including certain attorneys', accountants', appraisers', collateral examiners', consultants' and financial advisors' fees and expenses), breakage costs, charges, indemnities, Secured Swap Obligations (as defined in the ABL Credit Agreement), Specified Treasury Services Obligations (as defined in the ABL Credit Agreement), any Secured Supply Chain Obligations

(as defined in the ABL Credit Agreement), and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith (including all Obligations as defined in the ABL Credit Agreement), in each case, as and to the extent provided for in the ABL Loan Documents (collectively, the "ABL Obligations,") which shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against the applicable Debtor's estate. The ABL Obligations and all payments made to the ABL Secured Parties or applied to the ABL Obligations owing under the ABL Loan Documents prior to the Petition Date are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind, nature, or description pursuant to the Bankruptcy Code, or other applicable law.

(iii)    **Prepetition ABL Liens:**  To secure the ABL Obligations, each of the ABL Loan Parties granted to the ABL Agent, for the benefit of the ABL Secured Parties, properly perfected continuing liens and security interests (collectively, the "Prepetition ABL Liens") in all Collateral (as defined in the ABL Credit Agreement, the "Prepetition ABL Collateral").

(b)    **Term Loan:**

(i)    **Term Loan Credit Agreement:**  J. C. Penney Corporation, Inc., as borrower, JPMorgan Chase Bank, N.A., as administrative agent (the "Term Loan Administrative Agent"), and the lenders from time to time party thereto (the "Term Loan Lenders", and together with the Term Loan Administrative Agent and the other "Secured Parties" as defined in the Term Loan Agreement, the "Term Loan Secured Parties") are party to that certain Amended and Restated Credit and Guaranty Agreement, dated as of June 23, 2016 (as amended, restated, modified, amended and restated, or supplemented from time to time prior to the Petition Date, the "Term Loan Agreement"). Under the Term Loan Agreement, J. C. Penney Corporation, Inc., borrowed approximately $1.688 billion (the "Term Loans"), approximately $1.521 billion of which remains outstanding as of the Petition Date. The obligations under the Term Loan Agreement (the "Term Loan Obligations") are secured on a pari passu basis with the First Lien Notes Obligations, as defined herein, by the assets of each Term Loan Credit Party (as defined below) other than certain unencumbered real estate, including, without limitation, by a first priority lien on the Term Loan Credit Parties' equipment, real estate assets, intellectual property, equity interests and intercompany indebtedness owed to the Debtors, and

identifiable proceeds of the foregoing, and a second priority lien on the ABL Priority Collateral (as defined in the ABL Intercreditor Agreement).

(ii) **Term Loan Obligations:**  As of the Petition Date, the Credit Parties (as defined in the Term Loan Agreement, the "<u>Term Loan Credit Parties</u>") were jointly and severally liable and indebted to the Term Loan Administrative Agent and the Term Loan Lenders in the aggregate principal amount of approximately $1.521 billion, plus any other amounts due and payable under the Credit Documents (as defined in the Term Loan Agreement, the "<u>Term Loan Credit Documents</u>"), including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, certain expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith (including all Obligations as defined in the Term Loan Agreement), in each case, as and to the extent provided in, and required to be paid or reimbursed under, the Term Loan Credit Documents.

(iii) **Prepetition Term Loan/First Lien Notes Liens:**  To secure the Term Loan Obligations and the First Lien Notes Obligations (as hereinafter defined), each of the Debtors party thereto (constituting all of the Term Loan Credit Parties and the First Lien Notes Guarantors) granted to Wilmington Trust, National Association ("<u>Wilmington</u>"), as collateral agent (the "<u>Term Loan/First Lien Notes Collateral Agent</u>") for the Term Loan Secured Parties and the First Lien Notes Secured Parties (collectively, the "<u>Term Loan/First Lien Notes Secured Parties</u>"), for the benefit of the Term Loan/First Lien Notes Secured Parties, properly perfected continuing liens, mortgages on, and security interests (collectively, the "<u>Prepetition Term Loan/First Lien Notes Liens</u>") in all Collateral (as defined in the Term Loan Agreement and the First Lien Notes Indenture, the "<u>Prepetition Term Loan/First Lien Notes Collateral</u>").

(c) **First Lien Notes:**

(i) **First Lien Notes Indenture:** Pursuant to that certain Indenture, dated as of June 23, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "<u>First Lien Notes Indenture</u>", and together with the other "Notes Documents" as defined in the First Lien Indenture, the "<u>First Lien Notes Documents</u>"), among J. C. Penney Corporation, Inc., as issuer, J. C. Penney, J. C. Penney

Purchasing Corporation, JCP Real Estate Holdings, LLC and J. C. Penney Properties, LLC as guarantors, and Wilmington, as indenture trustee (the "First Lien Notes Indenture Trustee" and together with the First Lien Noteholders (as defined below) and the other Notes Secured Parties, as defined therein, collectively, the "First Lien Notes Secured Parties") J. C. Penney Corporation, Inc. issued 5.875% senior secured notes due July 2023 (the "First Lien Notes").

(ii)    **First Lien Notes Obligations:**   Pursuant to the First Lien Notes Indenture, J. C. Penney Corporation, Inc., issued, and the Guarantors (as defined in the First Lien Notes Indenture, the "First Lien Notes Guarantors") guaranteed, $500.0 million in aggregate principal amount of First Lien Notes.  As of the Petition Date, J. C. Penney Corporation, Inc., and the First Lien Notes Guarantors were liable and indebted to the holders of the First Lien Notes (the "First Lien Noteholders") and the other First Lien Notes Secured Parties in the aggregate principal amount of not less than $500.0 million in First Lien Notes, plus any other amounts due and payable under the First Lien Notes Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, certain expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith, in each case, as and to the extent provided in, and required to be paid or reimbursed under, the First Lien Notes Documents (collectively, the "First Lien Notes Obligations").

(iii)    **Prepetition First Lien Notes Liens:** See paragraph 5(b)(iii) of this Interim Order.

(d)    **Second Lien Notes:**

(i)    **Second Lien Notes Indenture:** Pursuant to that certain Indenture, dated as of March 12, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Second Lien Notes Indenture", and together with the other "Notes Documents" as defined in the Second Lien Indenture, the "Second Lien Notes Documents", and together with the ABL Loan Documents, the Term Loan Credit Documents, and the First Lien Notes Documents, the "Prepetition Secured Credit Documents"), among J. C. Penney Corporation, Inc., as issuer, J. C. Penney Company, Inc., J. C. Penney Purchasing Corporation, JCP Real Estate Holdings, LLC and J. C. Penney Properties, LLC as

guarantors, and Wilmington, as indenture trustee (the "<u>Second Lien Notes Indenture Trustee</u>" and together with the Second Lien Noteholders (as defined below) and the other Notes Secured Parties, as defined therein, collectively, the "<u>Second Lien Notes Secured Parties</u>"; the Second Lien Notes Secured Parties, together with the ABL Secured Parties, the Term Loan Secured Parties, and the First Lien Notes Secured Parties, collectively, the "<u>Prepetition Secured Parties</u>") J. C. Penney Corporation, Inc. issued 8.625% senior secured second priority notes due 2025 (the "<u>Second Lien Notes</u>").

(ii)    **Second Lien Notes Obligations:**   Pursuant to the Second Lien Notes Indenture, J. C. Penney Corporation, Inc. issued, and the Guarantors (as defined in the Second Lien Notes Indenture, the "<u>Second Lien Notes Guarantors</u>") guaranteed, $400.0 million in aggregate principal amount of Second Lien Notes.  As of the Petition Date, J. C. Penney and the Second Lien Notes Guarantors were liable and indebted to the holders of the Second Lien Notes (the "<u>Second Lien Noteholders</u>") and the other Second Lien Notes Secured Parties in the aggregate principal amount of not less than $400.0 million in Second Lien Notes, plus any other amounts due and payable under the Second Lien Notes Documents, including, without limitation, accrued and unpaid interest thereon, premiums, reimbursement obligations (contingent or otherwise), fees, costs, certain expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses), charges, indemnities, and any other amounts, liabilities, or obligations of whatever nature, whenever arising or accruing (whether before or after the Petition Date), that may be due, owing, or chargeable in connection therewith, in each case, as and to the extent provided in, and required to be paid or reimbursed under, the Second Lien Notes Documents (collectively, the "<u>Second Lien Notes Obligations</u>", and together with the ABL Obligations, the Term Loan Obligations, and the First Lien Notes Obligations, the "<u>Prepetition Secured Credit Obligations</u>").

(iii)   **Prepetition Second Lien Notes Liens:**   To secure the Second Lien Notes Obligations, J. C. Penney and each of the Second Lien Notes Guarantors granted to Wilmington, as collateral agent (the "<u>Second Lien Notes Collateral Agent</u>") for the Second Lien Notes Secured Parties, for the benefit of the Term Loan/First Lien Notes Secured Parties, properly perfected continuing liens, mortgages on, and security interests (collectively, the "<u>Prepetition Second Lien Notes Liens</u>," and together with the Prepetition ABL Liens and the Prepetition Term Loan/First Lien Notes Liens, collectively, the "<u>Prepetition Liens</u>") in all Collateral (as defined in the Second Lien Notes Indenture, the "<u>Prepetition Second Lien Notes Collateral</u>", and together with the Prepetition ABL Collateral and the Prepetition

Term Loan/First Lien Notes Collateral, the "Prepetition Collateral").

(e)     **Relative Priority of Prepetition Liens Under, and Enforceability of the Prepetition Intercreditor Agreements:**

(i)     the liens and security interests granted by the Debtor Obligors to the ABL Agent to secure the ABL Obligations for the benefit of the ABL Secured Parties pursuant to and in connection with ABL Loan Documents, including without limitation, the Security Documents (as defined in the ABL Credit Agreement), are valid, binding, perfected, enforceable, first priority liens and security interests on the Prepetition ABL Collateral, which is not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; provided that the liens and security interests granted in the Prepetition ABL Collateral shall be subject to (w) the Carve Out, (x) liens and security interests granted to the ABL Secured Parties to secure the Adequate Protection Obligations, (y) the terms and provisions of Prepetition Intercreditor Agreements and (z) valid, perfected, and unavoidable liens permitted under the ABL Loan Documents, to the extent such liens are permitted to be senior to the liens of the ABL Agent, exist as of the Petition Date, and secure valid, binding, and unavoidable debt permitted under the ABL Loan Documents (including, for the avoidance of doubt, such valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code);

(ii)    the liens and security interests granted by the Debtor Obligors to the Term Loan/First Lien Notes Collateral Agent to secure the Term Loan/First Lien Notes Obligations for the benefit of the Term Loan/First Lien Notes Secured Parties pursuant to and in connection with Term Loan Credit Documents and/or the First Lien Notes Documents (as applicable), including without limitation, the Collateral Documents (as defined in the Term Loan Agreement and the First Lien Notes Indenture), are valid, binding, perfected, enforceable, liens and security interests on the Prepetition Term Loan/First Lien Notes Collateral, which is not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; provided that the liens and security interests granted in the Prepetition Term Loan/First Lien Notes Collateral shall be subject and subordinate to (w) the Carve Out, (x) liens and security interests granted to secure the Adequate Protection Obligations, and (y) the terms and

provisions of Prepetition Intercreditor Agreements and (z) valid, perfected, and unavoidable liens permitted under the Term Loan Credit Documents and First Lien Notes Documents, to the extent such liens are permitted to be senior to the liens of the Term Loan/First Lien Notes Collateral Agent and exist as of the Petition Date (including, (1) for the avoidance of doubt, valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and (2) the Prepetition ABL Liens and ABL Adequate Protection Liens on the ABL Priority Collateral); and

(iii)     the liens and security interests granted by the Debtor Obligors to the Second Lien Notes Collateral Agent to secure the Second Lien Notes Obligations for the benefit of the Second Lien Notes Secured Parties pursuant to and in connection with Second Lien Notes Documents, including without limitation, the Collateral Documents (as defined in the Second Lien Notes Indenture), are valid, binding, perfected, enforceable, liens and security interests on the Prepetition Second Lien Notes Collateral, which is not subject to objection, defense, contest, avoidance, recharacterization, reclassification, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law by any person or entity; *provided* that the liens and security interests granted in the Prepetition Second Lien Notes Collateral shall be subject and subordinate to (w) the Carve Out, (x) liens and security interests granted to secure the Adequate Protection Obligations, and (y) the terms and provisions of Prepetition Intercreditor Agreements and (z) valid, perfected, and unavoidable liens permitted under the Second Lien Notes Documents, to the extent such liens are permitted to be senior to the liens of the Second Lien Notes Collateral Agent and exist as of the Petition Date (including, (A) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, (B) the Prepetition ABL Liens and ABL Adequate Protection Liens on the ABL Priority Collateral, and (C) the Prepetition Term Loan/First Lien Notes Liens);

(iv)     the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, and the Debtor Obligors are party to that certain Intercreditor and Collateral Cooperation Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "ABL Intercreditor Agreement"), dated as of June 23, 2016, which sets forth the relative lien priorities and other rights and remedies of the ABL Secured Parties and the Term Loan/First Lien Notes Secured Parties with respect to, among other things, the ABL Priority Collateral and the Term Loan Notes Exclusive Collateral (as such terms are defined in the ABL

Intercreditor Agreement).  The Term Loan Administrative Agent, the First Lien Notes Trustee, the Term Loan/First Lien Notes Collateral Agent and the Debtor Obligors are party to that certain Pari Passu Intercreditor Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "1L Pari Passu Intercreditor Agreement"), dated as of June 23, 2016, which sets forth the relative lien priorities and other rights and remedies of the Term Loan Secured Parties and the First Lien Notes Secured Parties with respect to, among other things, the Prepetition Term Loan/First Lien Notes Collateral.  The Term Loan/First Lien Notes Collateral Agent, the Second Lien Notes Collateral Agent and the Debtor Obligors are party to that certain Junior Priority Intercreditor Agreement (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "1L-2L Intercreditor Agreement," and together with the ABL Intercreditor Agreement and the 1L Pari Passu Intercreditor Agreement, collectively, the "Prepetition Intercreditor Agreements"), dated as of March 12, 2018, which sets forth the relative lien priorities and other rights and remedies of the Term Loan/First Lien Notes Secured Parties and the Second Lien Notes Secured Parties with respect to, among other things, the Prepetition Term Loan/First Lien Notes Collateral and the Prepetition Second Lien Notes Collateral.  The Prepetition Intercreditor Agreements are binding and enforceable against the Debtor Obligors and other parties thereto in accordance with their terms, and the Debtor Obligors and other parties thereto are not entitled to take any action that would be contrary to the provisions thereof.

(f)     **Additional Stipulations**.

(i)     the Prepetition Secured Credit Obligations constitute the legal, valid and binding obligation of the applicable Debtor borrowers, issuers and guarantors under the Prepetition Secured Credit Documents (together, the "Debtor Obligors"), enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code);

(ii)    (A) no portion of the Prepetition Secured Credit Obligations and no amounts paid at any time to the Prepetition Secured Parties in respect of the Prepetition Secured Credit Obligations, the Prepetition Secured Credit Documents, and the transactions contemplated thereby is subject to contest, attack, objection, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery or subordination or other challenge pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (B) the

Debtors do not have any claims, counterclaims, causes of action, defenses or setoff rights related to the Prepetition Secured Credit Obligations or the Prepetition Secured Credit Documents, whether arising on or prior to the date hereof, under the Bankruptcy Code or applicable nonbankruptcy law against the Prepetition Secured Parties, and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(iii)    all of the Debtors' existing cash and all cash (A) constituting Prepetition Collateral; (B) constituting proceeds, products, rents, or profits of property of Prepetition Collateral; or (C) subject to the Prepetition Secured Parties' rights of setoff constitutes cash collateral (collectively, the "<u>Cash Collateral</u>").

**E.    Release.**

6.    Subject to the limitations thereon contained in sections X and Y of this Interim Order, the release, discharge, waivers, settlements, compromises, and agreements set forth in this section E shall be deemed effective upon entry of this Interim Order.  The Debtors forever and irrevocably (i) release, discharge, and acquit the Prepetition Secured Parties, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest, in each case, in their respective capacities as such (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Secured Parties and the Debtors, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Secured Credit Obligations, the Prepetition Secured Credit Documents, the Debtors' attempts to restructure the Prepetition Secured Credit Obligations, any of the Debtors' other long-term indebtedness, consenting to the terms of this Interim Order and the use of Cash Collateral hereunder, any and all claims and causes of action arising under the Bankruptcy Code, and any and all claims regarding

the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Secured Parties; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Secured Credit Obligations.  Nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

**F.      Findings Regarding the Use of Cash Collateral and Prepetition Collateral.**

7.      Good cause has been shown for the entry of this Interim Order.

8.      The Debtors have an immediate need to use the Prepetition Collateral, including the Cash Collateral, to, among other things, fund the orderly continuation of their businesses, fund the Cases, pay their operating expenses and preserve the going concern value of the Debtors.

9.      The terms of the use of the Prepetition Collateral pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

10.      The terms of the use of the Prepetition Collateral pursuant to this Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's-length among the Debtors, the Prepetition Secured Parties and, pursuant to Bankruptcy Code sections 105, 361 and 363, the Prepetition Secured Parties are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

11.      The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d) and the Complex Case Procedures.  Absent granting the interim relief

sought by this Interim Order, the Debtors' estates could be immediately and irreparably harmed. The use of the Prepetition Collateral in accordance with this Interim Order is in the best interest of the Debtors' estates.

**G.      Authorization of Use of Cash Collateral and Prepetition Collateral.**

12.      The Debtors are hereby authorized to use the Prepetition Collateral, including Cash Collateral, during the period from the Petition Date through and including the Cash Collateral Termination Date (as defined in paragraph 31 below) for (i) working capital, general corporate purposes and administrative costs and expenses of the Debtors incurred in the Cases (including to fund the Cases), subject to the terms hereof, including the budget annexed hereto as **Annex 1** (as may be updated from time to time in accordance with the DIP Financing, without the consent or approval of the ABL Agent, which update shall be shared with the ABL Agent substantially concurrently with delivery thereof under the DIP Financing) (the "Budget"); (ii) to fund the Carve Out as set forth herein; and (iii) adequate protection payments to the ABL Agent, as provided herein.   All post-petition distributions and transfers by a Debtor to any other Debtor (each, a "Debtor Transferee") shall constitute an allowed administrative expense under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code against such Debtor Transferee in the aggregate amount of such distribution or transfer, which administrative expense claim against such Debtor Transferee shall be junior in all respects to the Adequate Protection Claims (as defined in paragraph 19(a) of this Interim Order) against such Debtor Transferee.  For the avoidance of doubt, none of the Debtors will use Cash Collateral in an amount or in a manner or for a purpose other than those consistent with the categories outlined in the Budget and this Interim Order.   All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations, or otherwise, will be deposited and applied as required by this Interim Order.

H.    [Consent by the Prepetition Secured Parties.]

13.    [To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed to have consented, as applicable, to the Debtors' use of Prepetition Collateral (including Cash Collateral) in accordance with, and subject to the terms and conditions of, this Interim Order.  The Debtors shall deliver to the ABL Agent, the Term Loan Administrative Agent, and the First Lien Indenture Notes Trustee and each of their respective counsel and financial advisor, if known, all variance reports (each, a "Variance Report") delivered to the DIP Agent in connection with the DIP Facility.]

I.    Entitlement to Adequate Protection.

14.    Subject to the Carve Out and the Prepetition Intercreditor Agreements, as adequate protection for and solely to the extent of the amount of diminution in value of their respective interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, the aggregate amount of Cash Collateral used by each Debtor on a dollar-for-dollar basis, the imposition of the automatic stay, the subordination of their Prepetition Liens and Claims to the Carve Out and any other act or omission which causes diminution in the value of their interests in the Prepetition Collateral (collectively, and to the fullest extent permitted under the Bankruptcy Code, the "Diminution in Value"), the Prepetition Secured Parties, as and to the extent set forth in this Interim Order, are entitled to adequate protection pursuant to sections 361, 362, 363 and 354 of the Bankruptcy Code.  Based on the Motion, the declarations, or other evidence filed in support of the Motion, and record presented to the Court in connection with the Interim Hearing, the terms of the adequate protection arrangements and of the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

**J.      Adequate Protection Claims and Liens.**

15.      **Adequate Protection for ABL Secured Parties.**  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Debtors hereby grant the ABL Secured Parties adequate protection of their interests in all Prepetition ABL Collateral, including Cash Collateral, against any Diminution in Value of the ABL Secured Parties' interests in the Prepetition ABL Collateral (including Cash Collateral) from and after the Petition Date:

(a)      **ABL Adequate Protection Claims.**  The adequate protection obligations, solely to the extent of any Diminution in Value (the "Adequate Protection Obligations"), shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "ABL Adequate Protection Claims"), with a senior right to payment from the proceeds of ABL Priority Collateral over all other administrative claims and obligations of the Debtors (the "Payment Right"), subject and subordinate only to the Carve Out; provided, however, that nothing herein shall impair, prejudice, or affect the relief that may be granted in connection with any subsequently approved postpetition financing (such financing, "DIP Financing," the lenders thereto, the "DIP Lenders," and the order of the Bankruptcy Court approving the DIP Financing, the "DIP Order")[5] with respect to the priority of the ABL Agent's Payment Right vis-à-vis any claims granted to the DIP Lenders pursuant to the DIP Order, but for the avoidance of doubt, any claims granted in connection with any such DIP Financing shall be junior in priority of right to payment from the proceeds of ABL Priority Collateral to the ABL Agent's right to payment of its Prepetition ABL Obligations and ABL Adequate Protection Claims from such ABL Priority Collateral.

(b)      **Adequate Protection Lien.**  As security for and solely to the extent of any Diminution in Value, the Adequate Protection Obligations are effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other

---

[5]      For the avoidance of doubt, the DIP Order and the Final Order may be the same order

similar documents, or the possession or control by the ABL Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the ABL Agent for the benefit of itself and the other ABL Secured Parties (all property identified in clauses (i) and (ii) below being collectively referred to as the "<u>ABL Adequate Protection Collateral</u>"), subject and subordinate only to the Carve Out (all such liens and security interests, the "<u>ABL Adequate Protection Liens</u>").

(i) **Liens Junior to Certain Existing Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, the Prepetition Term Loan/First Lien Notes Collateral, that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Term Loan/First Lien Notes Collateral Agent; *provided* that (A) the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof and (B) such lien shall be junior to (1) the lien granted to the Term Loan/First Lien Notes Collateral Agent, for the benefit of the Term Loan/First Lien Notes Secured Parties, pursuant to paragraph 17(b)(ii) of this Interim Order and (2) the lien granted to the Second Lien Notes Collateral Agent, for the benefit of the Second Lien Notes Secured Parties, pursuant to paragraph 19(b)(ii) of this Interim Order.

(ii) **Liens Senior to Certain Existing Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, ABL Priority Collateral other than any Excluded Assets (as defined in the Collateral Agreement (as defined in the ABL Credit Agreement)); provided that such liens and security interests shall prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Term Loan/First Lien Notes Collateral Agent or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted

by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Term Loan/First Lien Notes Collateral Agent; *provided*, further, that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof.

(iii)   **Additional Adequate Protection Liens**.   Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, enforceable, fully-perfected non-voidable first-priority lien on, and security interest in any unencumbered tangible and intangible, real (including leaseholds) and personal prepetition and postpetition property of each DIP Loan Party (excluding (x) any assets that qualify as ABL Priority Collateral and (y) any Excluded Assets, as defined in the Pledge and Security Agreement (as defined in the Term Loan Agreement)), whether existing on the Petition Date or thereafter acquired, and wherever located, and the proceeds, products, rents, and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise (collectively, the "<u>Additional Assets</u>"), *provided*, *however*, that nothing in this Interim Order shall impair, modify, or affect the Debtors' ability to grant a valid, binding, enforceable, fully-perfected, non-voidable first-priority lien on, and security interest in, the Additional Assets to the DIP Lenders pursuant to the DIP Order, and all parties' rights are reserved pursuant to this Interim Order with respect to such grant as may be set forth in the DIP Order.

(iv)   **Status of the ABL Adequate Protection Liens.**   The ABL Adequate Protection Liens shall not be (1) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (2) except as otherwise set forth in clauses (i) and (ii) of this paragraph 15(b), subordinated to or made pari passu with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

(v)   For the avoidance of doubt, any liens granted in connection with any subsequently approved DIP Financing shall be junior in priority to the liens of the ABL Agent on the ABL Priority Collateral, including

without limitation the ABL Adequate Protection Liens and any liens securing the Prepetition ABL Obligations.

16.     **Additional Adequate Protection for ABL Secured Parties.**   As additional adequate protection of the ABL Secured Parties' security interests in the Prepetition ABL Collateral, including the Cash Collateral, the Debtors shall provide adequate protection in the form of the following (collectively, the "ABL Adequate Protection" and the payments set forth in clauses 16(a)-(c) of this Interim Order, the "ABL Adequate Protection Payments").

(a)     **Interest and Other Amounts Due Under ABL Credit Agreement.** From and after entry of this Interim Order, the ABL Agent, on behalf of the ABL Secured Parties, shall receive cash payment in immediately available funds, (x) promptly upon the entry of this Interim Order, all accrued and unpaid amounts (whether accrued prior to or after the Petition Date) in respect of the following, and (y) thereafter, as and when due under the ABL Credit Agreement or as provided herein (whichever is earlier): all interest at the non-default rate, fees and other amounts (other than principal), including without limitation, any fees with respect to outstanding Letters of Credit provided for in Section 2.11(b) of the ABL Credit Agreement; provided, that for the avoidance of doubt, (i) the Debtors shall not be required to pay any commitment fees set forth in Section 2.11(a) of the ABL Credit Agreement with respect to any period beginning on or after the Petition Date; and (ii) interest shall continue to accrue and be added to the ABL Obligations at the default rate in accordance with the terms of the Credit Agreement (but, for the avoidance of doubt, the Debtors shall not be required to pay current the additional 2% default interest in cash as adequate protection pursuant this Interim Order).  Interest and other fees under the ABL Credit Agreement shall be paid on the same dates as currently required by the ABL Credit Agreement.

(b)     **Reporting.**  The Debtors shall (i) comply with the reporting requirements set forth in Section 5.01(b) of the ABL Credit Agreement; and (ii) provide ABL Agent with all information, reports, documents, and other materials that the Debtors provide to the DIP Agent or any DIP Lenders pursuant to the DIP Documents, this Interim Order, and the Final Order at the same time such materials are provided to any of the DIP Lenders, including all updated Budgets and proposed amendments or modifications to an existing Budget.

(c)     **Fees and Expenses.**  The Debtors are authorized and directed to pay the reasonable and documented invoiced out-of-pocket fees, costs and expenses of (A) Otterbourg, P.C., (B) M-III Partners, and (C) one local counsel, in each case incurred on behalf of the ABL Agent and ABL Lenders in connection with the Chapter 11 Cases, subject to the review procedures set forth in paragraph 20 of this Interim Order.  Within 3 calendar days of the

entry of this Interim Order by the Court, the professionals described in this paragraph 16(c) shall provide a good-faith estimate of their expected fees for the period of the Cases and shall provide updates to such estimated on the first Monday of each calendar month following the Petition Date; *provided*, *however*, for the avoidance of doubt, such estimates shall not serve as caps.

(d)   **Cash Management Covenant.**   The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order; *provided* that the Debtors are authorized to create the Escrow Account as defined in the DIP Term Sheet in which the Subsequent Borrowing proceeds shall be deposited.

(e)   **Cash Collateral Borrowing Base**.   The Debtors shall not permit Excess Availability (as defined in the ABL Credit Agreement) at any time to be less than (i) 10% of the Revolving Credit Line Cap (as defined in the ABL Credit Agreement) for the period from the Petition Date through August 8, 2020, or (ii) 7.5% of the Revolving Credit Line Cap (as defined in the ABL Credit Agreement) at all times on and after August 9, 2020 (the "Minimum Excess Availability Requirement"); *provided*, that, notwithstanding anything to the contrary in the ABL Credit Agreement, the definition of "Borrowing Base" used in the calculation of Excess Availability shall be the "Borrowing Base" as defined in, and determined in accordance with, the ABL Credit Agreement and set forth in the most recent Cash Collateral Borrowing Base Certificate delivered prior to the Petition Date but modified as provided below herein (the "Cash Collateral Borrowing Base"), which, for the avoidance of doubt, shall give effect to the Net Orderly Liquidation Values ("NOLV") set forth in the appraisal prepared by Tiger Valuation Services, LLC for the ABL Agent delivered to the Debtors on April 28, 2020 pursuant to Section 5.14 of the ABL Credit Agreement which NOLV shall remain in effect for a period of six months; *provided* that notwithstanding anything to the contrary (i) in the ABL Credit Agreement, (x) the Cash Collateral Borrowing Base shall not otherwise reflect any new discretionary reserves, during such period or any modifications to any eligibility criteria set forth in the ABL Credit Agreement or formulas used to compute formulaic reserves presently in effect in effect as of the Petition Date (and no new formulaic reserves not presently in effect shall be imposed), (y) the Borrowing Base will be calculated using any updated Borrowing Base Certificate (as defined in the ABL Credit Agreement) as and when required to be delivered pursuant to paragraph 17(h) below and (z) the Cash Collateral Borrowing Base shall be increased (on a dollar-for-dollar basis) by the amount of cash held in the Segregated Cash Collateral Account (as defined below) (the "Builder Cash") as provided below and (ii) in the event that a Post-Maturity Exam (as defined below) has been completed (but at no time prior to the completion thereof), the Cash Collateral Borrowing Base and NOLV may be adjusted in accordance with the ABL Prepetition Credit Agreement, as modified hereby.   The sole

consequences of the Debtors failure to maintain compliance with the Minimum Excess Availability Requirement are set forth in paragraph 17(g) below.

(f)    **Appraisals**.  Notwithstanding anything to the contrary in the ABL Credit Agreement, the ABL Agent will not be entitled to request access for and/or request any new inspections, appraisals and field examinations (including, without limitation, with respect to ABL Priority Collateral) for a period of six months, at which point the ABL Agent may request access for and commission on one new appraisal and one new field examination of ABL Priority Collateral on terms consistent with the ABL Credit Agreement (such appraisal and field examination, the "Post-Maturity Exam"). Notwithstanding the foregoing, the ABL Agent shall be permitted to request access for and/or request any new inspections, appraisals, and field examinations from time to time, at the ABL Agent's own expense, for valuation purposes only, which (i) do not impact the calculation of the Cash Collateral Borrowing Base and (ii) do not unreasonably interfere with the ordinary course activities and operations of the Debtors as in effect at such time.

(g)    **Segregated Collateral Account.**  If, at any point in the Chapter 11 Cases, the Debtor Obligors fail to comply with the Minimum Excess Availability Requirement, the Debtors will be required to, at their option, either: (x) deposit cash into a controlled segregated cash reserve account maintained at Wells Fargo Bank, N.A. (which account and all funds maintained therein shall constitute ABL Priority Collateral that is secured by Prepetition ABL Liens) on a dollar-for-dollar basis equal to the amount necessary to restore compliance with the Minimum Excess Availability Requirement, which amount shall be deemed automatically designated as Builder Cash (and shall increase the Cash Collateral Borrowing Base accordingly) (such account, the "Segregated Cash Collateral Account"), or (y) pay down the outstanding ABL Obligations in cash (using cash on hand or cash in the Segregated Cash Collateral Account) in the amount necessary to restore compliance with the Minimum Excess Availability Requirement, in each case, within one (1) business day of receipt of written notice from the ABL Agent of such non-compliance with the Minimum Excess Availability Requirement.  In the event the Debtors deposit cash into the Segregated Cash Collateral Account as described in provision (x) of this paragraph, the cash shall be maintained in this account until such time the Debtors restore compliance with the Minimum Excess Availability Requirement, at which time such cash may be either (i) withdrawn by the Debtors (at the Debtors' sole and exclusive option) so long as the Debtor Obligors shall be in compliance with the Minimum Excess Availability Requirement immediately after giving effect to such withdrawal or (ii) to the extent not withdrawn by the Debtors, be maintained in such Segregated Cash Collateral Account and continue to increase the Cash Collateral Borrowing Base on a dollar-for-dollar basis (regardless of whether the Debtors

Obligors shall be in compliance with the Minimum Excess Availability Requirement); provided, that notwithstanding any election by the Debtor Obligors to maintain Builder Cash in the Segregated Cash Collateral Account, the Debtors may withdraw any amount thereof so long as the Debtor Obligors shall be in compliance with the Minimum Excess Availability Requirement immediately after giving effect to such withdrawal. Upon the occurrence of any Cash Collateral Termination Event, the ABL Agent shall be entitled to apply amounts maintained in the Segregated Cash Collateral Account to repay the Prepetition ABL Obligations; *provided* that the ABL Agent shall provide Debtors with five (5) business days prior notice of its intention to apply such funds. For the avoidance of doubt, nothing herein shall prejudice Debtors' right to object to the ABL Agent's application of such funds on any grounds.

(h)     **Borrowing Base Certificate.**  The Debtors shall provide the ABL Agent with a Borrowing Base Certificate (as defined in, and as contemplated by Section 5.01(g)(ii) of the ABL Credit Agreement), subject to the modifications described in this paragraph 16(h) (the "Cash Collateral Borrowing Base Certificate"), within five (5) business days of the end of each calendar week beginning following the second full calendar week following the Petition Date, calculated as of the close of business on Saturday of the immediately preceding calendar week; *provided,* that notwithstanding anything to the contrary in this Interim Order or Section 5.01(g)(ii) of the ABL Credit Agreement, the Cash Collateral Borrowing Base shall (i) only be required to include a weekly roll-forward of Borrowing Base (as defined in the ABL Credit Agreement) components included in the computation of "Total Inventory" and "Available Inventory" as calculated in accordance with the Borrowing Base Certificate (as defined in the ABL Credit Agreement) delivered with respect to the period ended April 4, 2020 (the "Most Recent Borrowing Base Certificate"), (ii) only be required to include a monthly roll-forward of all other Borrowing Base (as defined in the ABL Credit Agreement) components set forth on the Most Recent Borrowing Base Certificate (i.e., all such components shall be updated first in the Cash Collateral Borrowing Base Certificate delivered one month following the delivery of the first Cash Collateral Borrowing Base Certificate) (*provided*, that, the Debtors may, at their election, roll-forward such Borrowing Base (as defined in the ABL Credit Agreement) components on a weekly basis) and (iii) the "In Home Custom Window and Service Inventory" shall only be required to be updated monthly (i.e., such component shall be updated first in the Cash Collateral Borrowing Base Certificate delivered one month following the delivery of the first Cash Collateral Borrowing Base Certificate) (provided, that, the Debtors may, at their election roll-forward such Borrowing Base (as defined in the ABL Credit Agreement) component on a weekly basis).

(i)     **Consent / Administration Fee**.  In consideration for the ABL Agent's consent to the use of Cash Collateral in accordance with the terms of this

Interim Order and continued maintenance of the Debtors' cash management system, the ABL Agent shall be paid, in addition to all ABL Obligations owing by Debtors to the ABL Secured Parties, a weekly fee in the amount of $500,000 until all ABL Obligations have been Paid in Full (the "Administration Fee").  The Administration Fee shall be fully earned and payable on the Monday of each week following the Petition Date through the date on which the ABL Obligations are Paid in Full.  The Administration Fee shall be part of the ABL Obligations.  Notwithstanding anything to the contrary in this Interim Order (but subject to the Carve-Out), the ABL Agent is hereby authorized to apply any Cash Collateral on hand at any time to the permanent payment of the Administration Fee without further notice to the Debtors or any other party.  The term "Payment in Full" or "Paid in Full" means the indefeasible repayment in full in cash of all obligations (including principal, interest, fees, expenses, indemnities, other than contingent indemnification obligations for which no claim has been asserted) under the applicable credit facility, the cash collateralization of all treasury and cash management obligations, hedging obligations, and bank product obligations, and the cancelation, replacement, backing, or cash collateralization of letters of credit, in each case, in accordance with the terms of the applicable credit facility.  No facility shall be deemed to have been Paid in Full until such time as, with respect to the applicable facility, (a) the commitments to lend thereunder have been terminated, (b) with respect to the Prepetition ABL Obligations (i) the Challenge Deadline (as defined in paragraph 50 of this Interim Order) shall have occurred without the timely and proper commencement of a Challenge or (ii) if a Challenge is timely and properly asserted prior to the Challenge Deadline, upon the final, non-appealable disposition of such Challenge; and (c) the ABL Agent has received (i) a countersigned payoff letter in form and substance satisfactory to such Agent and (ii) releases from the Debtors (including any party acting on behalf of any of the Debtors or their Estates, if applicable) in form and substance satisfactory to such Agent, each in its sole discretion.

(j)  **Discharge Waiver**.  Subject to the entry of a Final Order, the Debtors expressly stipulate that neither the ABL Adequate Protection Claims nor the ABL Adequate Protection Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding section 1141(d) of the Bankruptcy Code, unless (i) the order is entered with the prior written consent of the ABL Agent, (ii) the Court enters an order finding that the ABL Adequate Claims are valued at zero dollars; or (iii) the ABL Adequate Claims have been Paid in Full in cash on or before the effective date of such plan.

17.  **Adequate Protection for Term Loan/First Lien Notes Secured Parties.**

Pursuant to sections 361 363(e) of the Bankruptcy Code, the Debtors hereby grant the Term Loan/First Lien Notes Secured Parties adequate protection of their interests in all Prepetition Term

Loan/First Lien Notes Collateral, against any Diminution in Value of the Term Loan/First Lien Notes Secured Parties' interests in the Prepetition Term Loan/First Lien Notes Collateral, from and after the Petition Date:

(a) **Term Loan/First Lien Notes Adequate Protection Claim.** The adequate protection obligations, solely to the extent of any Diminution in Value (the "Term Loan/First Lien Notes Adequate Protection Obligations"), shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Term Loan/First Lien Notes Adequate Protection Claims") subject and subordinate only to the Carve Out.

(b) **Term Loan/First Lien Notes Adequate Protection Lien.** As security for and solely to the extent of any Diminution in Value, the Term Loan/First Lien Notes Adequate Protection Obligations are effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Term Loan Administrative Agent or the Term Loan/First Lien Notes Collateral Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Term Loan Administrative Agent for the benefit of itself and the other Term Loan/First Lien Notes Secured Parties (all property identified in clauses (i) and (ii) below being collectively referred to as the "Term Loan/First Lien Notes Adequate Protection Collateral"), subject and subordinate only to the Carve Out (all such liens and security interests, the "Term Loan/First Lien Notes Adequate Protection Liens").

(i) **Liens Junior to Certain Existing Liens.** Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, ABL Priority Collateral other than Excluded Assets (as defined in the Collateral Agreement (as defined in the ABL Credit Agreement)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section

546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Term Loan/First Lien Notes Collateral Agent; *provided* that (A) the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof (B) such lien shall be junior to the lien granted to the ABL Agent, for the benefit of the ABL Secured Parties, pursuant to paragraph 15(b)(ii) of this Interim Order.

(ii)  **Liens Senior to Certain Existing Liens.**  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Term Loan/First Lien Notes Collateral; *provided* that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Term Loan/First Lien Notes Collateral Agent or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Term Loan/First Lien Notes Collateral Agent; *provided*, further, that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof.

(iii)  **Status of the Term Loan/First Lien Notes Adequate Protection Liens.**  The Term Loan/First Lien Notes Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (ii) except as otherwise set forth in clauses (1) and (2) of this paragraph 17(b), subordinated to or made pari passu with any other lien or security interest, now or

hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

18. **Additional Adequate Protection for Term Loan/First Lien Notes Secured Parties.** As additional adequate protection of the Term Loan/First Lien Notes Secured Parties' security interests in the Prepetition Term Loan/First Lien Notes Collateral, including the Cash Collateral, the Debtors are authorized to provide adequate protection in the form of the following (collectively, the "Term Loan/First Lien Notes Adequate Protections" and the payments set forth in clause 18(a) of this Interim Order, the "Term Loan/First Lien Notes Adequate Protection Payments").

(a) **Fees and Expenses.** The Debtors are authorized and directed to pay from the proceeds of the DIP Facility the reasonable and documented invoiced out-of-pocket fees, costs and expenses of the Milbank First Lien Group including such amounts due to Milbank LLP, Deutsche Bank AG, Houlihan Lokey, Hilco Global, counsel to the Term Loan Administrative Agent, counsel to the Term Loan/First Lien Notes Collateral Agent, and counsel to the First Lien Notes Indenture Trustee, in each case incurred in connection with the Chapter 11 Cases, subject to the review procedures set forth in paragraph 20 of this Interim Order. Within 3 calendar days of the entry of this Interim Order by the Court, the professionals described in this paragraph 18(a) shall provide a good-faith estimate of their expected fees for the period of the Cases and shall provide updates to such estimated on the first Monday of each calendar month following the Petition Date; *provided*, *however*, for the avoidance of doubt, such estimates shall not serve as caps.

(b) **Reporting.** The Debtors shall (i) comply with the reporting requirements set forth in Section 5.1(a) of the Term Loan Agreement and (ii) provide the Term Loan Lenders and First Lien Noteholders with the same materials provided to the ABL Secured Parties pursuant to paragraph 16(b) of this Interim Order.

(c) **Cash Management Covenant.** The Debtors shall maintain their cash management arrangements in a manner consistent with that described in the applicable "first day" order; *provided* that the Debtors are authorized to create new, segregated bank accounts as required under any debtor-in-possession financing arrangements approved by the Court during the Cases, including one or more segregated bank accounts opened to hold the proceeds of the DIP Financing, which shall not constitute ABL Priority Collateral and shall be subject to control agreements in favor of the DIP Agent.

19.     **Adequate Protection for Second Lien Notes Secured Parties.**   Pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code, the Debtors hereby grant the Second Lien Notes Secured Parties adequate protection of their interests in all Second Lien Notes Collateral, against any Diminution in Value of the Second Lien Notes Secured Parties' interests in the Second Lien Notes Collateral, from and after the Petition Date:

(a)     **Second Lien Notes Adequate Protection Claim.**  The adequate protection obligations, solely to the extent of any Diminution in Value (the "Second Lien Notes Adequate Protection Obligations"), shall constitute joint and several superpriority claims against the Debtors as provided in section 507(b) of the Bankruptcy Code, with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Cases or any subsequent proceedings under the Bankruptcy Code (the "Second Lien Notes Adequate Protection Claims," and together with the ABL Adequate Protection Claim and the Term Loan/First Lien Notes Adequate Protection Claim, the "Adequate Protection Claims"), subject and subordinate only to the Carve Out.

(b)     **Second Lien Notes Adequate Protection Lien.**  As security for and solely to the extent of any Diminution in Value, the Second Lien Notes Adequate Protection Obligations are effective as of the Petition Date and perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Second Lien Notes Collateral Agent of any Adequate Protection Collateral (as defined below), the following security interests and liens are hereby granted to the Second Lien Notes Collateral Agent for the benefit of itself and the other Second Lien Notes Secured Parties (all property identified in clauses (i) and (ii) below being collectively referred to as the "Second Lien Notes Adequate Protection Collateral," together with the ABL Adequate Protection Collateral and the Term Loan/First Lien Notes Adequate Protection Collateral, the "Adequate Protection Collateral"), subject and subordinate only to the Carve Out (all such liens and security interests, the "Second Lien Notes Adequate Protection Liens," and together with the ABL Adequate Protection Liens and the Term Loan/First Lien Notes Adequate Protection Liens, the "Adequate Protection Liens").

(i)   **Liens Junior to Certain Existing Liens.**  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable junior priority replacement lien on, and security interest in, ABL Priority Collateral other than Excluded Assets (as defined in the Collateral Agreement (as defined in the ABL Credit Agreement)), that is subject to (x) valid, perfected and unavoidable liens in existence as of the Petition Date or (y) valid and unavoidable liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which valid, perfected and unavoidable liens are senior in priority to the security interests and liens in favor of the Second Lien Notes Collateral Agent; *provided* (A) that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the proceeds thereof and (B) such lien shall be junior to (1) the lien granted to the ABL Agent, for the benefit of the ABL Secured Parties, pursuant to paragraph 15(b)(ii) of this Interim Order and (2) the lien granted to the Term Loan/First Lien Notes Collateral Agent, for the benefit of the Term Loan/First Lien Notes Secured Parties, pursuant to paragraph 17(b)(i) of this Interim Order.

(ii)   **Liens Senior to Certain Existing Liens.**  Pursuant to sections 361(2) and 363(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected non-voidable priming lien on, and security interest in, the Prepetition Second Lien Notes Collateral; *provided* (A) that such liens and security interests shall not prime (x) any valid, perfected and unavoidable liens and security interests in existence as of the Petition Date that are held by or granted to any person other than the Second Lien Notes Collateral Agent or (y) valid and unavoidable liens and security interests in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code and that are held by or granted to any person other than the Second Lien Notes Collateral Agent; (B) that the foregoing collateral shall not include assets or property (other than Prepetition Collateral, including Cash Collateral) upon which, and solely to the extent that, the grant of an Adequate Protection Lien as contemplated in this Interim Order, would constitute a default or event of default under any of the Debtors' contracts or leases (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable nonbankruptcy law), but shall include the

proceeds thereof; and (C) such lien shall be junior to the lien granted to the Term Loan/First Lien Notes Collateral Agent, for the benefit of the Term Loan/First Lien Notes Secured Parties pursuant to paragraph 17 of this Interim Order.

(iii)     **Status of the Second Lien Notes Adequate Protection Liens.** The Second Lien Notes Adequate Protection Liens shall not be (1) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject and subordinate to the Carve Out, or (2) except as otherwise set forth in clauses (i) and (ii) of this paragraph 19(b)(iii), subordinated to or made pari passu with any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

20.     **Adequate Protection Fees and Expenses**.  Subject to the review procedures set forth in this paragraph 19, payment of all reasonable and documented invoiced out-of-pocket fees and expenses provided for herein as adequate protection shall not be required to comply with the U.S. Trustee guidelines or file fee applications with the Court with respect to any fees or expenses payable herein, may be in summary form only (and shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine), and shall be provided to counsel to the Debtors, any statutory committee, and the U.S. Trustee (the "Fee Notice Parties"); *provided*, *however*, that any time such professionals seek payment of fees and expenses from the Debtors, the Debtors reserve their rights to request additional information regarding the services rendered and expenses incurred by such professionals, subject to any attorney-client privilege limitations.  If no objection to payment of the requested fees and expenses is made in writing by any of the Fee Notice Parties within ten business days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice

to any other party, such fees and expenses shall be promptly paid by the Debtors and, in any case, within ten business days.  If an objection is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.  Payments of any amounts set forth in this paragraph 19 shall not be subject to recharacterization, subordination, or disgorgement, unless expressly provided herein.

**K.    Carve Out.**

21.    Notwithstanding anything to the contrary in this Interim Order, the Debtors' obligations to the DIP Lenders and Prepetition Secured Parties and the liens, security interests, and superpriority claims granted herein, under the Prepetition Secured Credit Documents, including, without limitation, the Adequate Protection Liens, the Adequate Protection Claims, and the Prepetition Liens, shall be subject in all respects and subordinate to the Carve Out as and to the extent set forth in this Interim Order.

22.    As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any restructuring, sale, success, or other transaction fee of any investment bankers or financial advisors of the Debtors or any Official Committee) (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals")

and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the ABL Agent or the Term Loan Administrative Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,000,000.00 incurred after the first business day following delivery by the ABL Agent or the Term Loan Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the ABL Agent or the Term Loan Administrative Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

23.    Carve Out Reserves.  The Debtors shall establish and fund a segregated account (the "Funded Reserve Account") for purposes of funding the Carve Out.  The Funded Reserve Account will be funded from all cash on hand and any available cash thereafter held by any Debtor, including Cash Collateral.  Notwithstanding anything to the contrary in this Interim Order or the Prepetition Secured Credit Documents, in no circumstances (which, for the avoidance of doubt, includes, but is not limited to, a Cash Collateral Termination Event or an Event of Default) shall the Debtors be prohibited in any way from accessing or drawing upon Cash Collateral for the

purpose of funding the Funded Reserve Account, subject to the terms of this Interim Order.  Upon entry of this Interim Order, the Debtors will deposit into the Funded Reserve Account an amount equal to the aggregate amount of Allowed Professional Fees projected to accrue from the Petition Date through the date of the Final Hearing (the "Initial Funded Reserve Amount"), which, for the avoidance of doubt, shall not include the Post-Carve Out Trigger Notice Cap.  Commencing June 1, 2020 (or the first business day thereafter), on the 15th and last day of each month, the Debtors shall deposit in the Funded Reserve Account an amount equal to the aggregate amount of Allowed Professional Fees (excluding restructuring, sale, financing, or other success fees) projected to accrue for the following two week period in the Budget *plus* twenty percent of such aggregate amount of Allowed Professional Fees projected to accrue in the next two week period in the Budget (the "Bi-Weekly Funded Reserve Amount").  Each Professional Person shall deliver to the Debtors a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred in the preceding 2 -week period (each such statement, a "Fee Statement"), and to the extent the amount of Allowed Professional Fees accrued and claimed in a Fee Statement exceeds the Initial Funded Reserve Amount or the Bi-Weekly Funded Reserve Amount for the applicable periods, respectively, and such fees and expenses have otherwise not been paid by the Debtors, the Debtors shall, within one business day, fund additional amounts into the Funded Reserve Account equal to the difference between, as applicable, the Initial Funded Reserve Amount or the Bi-Weekly Funded Reserve Amount and the amount accrued and claimed in the applicable Fee Statement (each, a "Top Off Amount").  At any time, if the Debtors in good faith believe a restructuring, sale, financing, or other success fee has been earned by a Professional Person and is then due and payable, the Debtors shall deposit in the Funded Reserve Account an amount equal to such fee.  Upon entry of the Final Order, the Debtors shall deposit into the Funded

Reserve Account an amount equal to (i) the Post-Carve Out Trigger Notice Cap plus (ii) the amounts contemplated under (b)(i) and (ii) above. The Funded Reserve Account shall be maintained, and the funds therein (the "Funded Reserve Amount") shall be held in trust, for the benefit of Professional Persons. Any and all amounts in the Funded Reserve Account shall not be subject to any cash sweep and/or foreclosure provisions in the Prepetition Secured Credit Documents and the Prepetition Secured Parties shall not be entitled to sweep or foreclose on such amounts notwithstanding any provision to the contrary in the Prepetition Secured Credit Documents. Notwithstanding the foregoing, any and all payments to Professional Persons allowed by the Court (excluding restructuring, sale, financing, or other success fees) shall be paid first from the Funded Reserve Account.

24.     On the day on which a Carve Out Trigger Notice is given by the ABL Agent or the Term Loan Administrative Agent to the Debtors in accordance with paragraph 22 above, with a copy to counsel to the Official Committee, if any, and the U. S. Trustee (the "Termination Declaration Date"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, including Cash Collateral, to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees in excess of the Funded Reserve Amount; *provided* that in the event that a Termination Declaration Date occurs, Professional Persons shall have two business days to deliver additional Fee Statements to the Debtors that cover such Professional Person's good faith estimate of the Allowed Professional Fees incurred through the Termination Declaration Date, and the Debtors shall fund into the Funded Reserve Amount any Top Off Amounts. The Debtors shall deposit and hold such amounts in the Funded Reserve Account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other

claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor, including Cash Collateral, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap to the extent not already funded (including upon entry of the Final Order as set forth above).  The Debtors shall deposit and hold such amounts in a segregated account at an institution designated by the ABL Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the ABL Agent for the benefit of the ABL Lenders, unless the ABL Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the remaining Prepetition Secured Parties in accordance with their rights and priorities as set forth herein.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the ABL Agent for the benefit of the ABL Lenders, unless the ABL Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the remaining Prepetition Secured Parties in accordance with their rights and priorities as

set forth herein.  Notwithstanding anything to the contrary in this Interim Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 24, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 24, prior to making any payments to the Prepetition Secured Parties, as applicable.  Notwithstanding anything to the contrary in this Interim Order, following delivery of a Carve Out Trigger Notice, none of the ABL Agent, the Term Loan Administrative Agent, or the First Lien Notes Indenture Trustee shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the ABL Agent for application in accordance with the Prepetition Secured Credit Documents.  Further, notwithstanding anything to the contrary in this Interim Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (ii) in no way shall the Budget, the Carve Out, the Post-Carve Out Trigger Notice Cap, the Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, or in any Prepetition Secured Credit Documents, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, the Prepetition Liens, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Credit Obligations.

25.   Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration

Date in respect of any Allowed Professional Fees shall not reduce the Carve Out and shall be funded first from the Funded Reserve Account.

26.    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

27.    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

28.    <u>Reservation of Rights Regarding Allocation of Carve-Out</u>.  Notwithstanding anything to the contrary herein, nothing in this Interim Order shall impair, modify, or affect the allocation of the Carve Out as between the ABL Priority Collateral and the DIP Collateral (as defined in the DIP Order), to the extent the Court enters a DIP Order, with such allocation methodology to be set forth in the DIP Order; *provided*, *further*, that such allocation as set forth in the DIP Order shall not, under any circumstances, affect the funding of the Carve Out or the Professionals' rights with respect to the Carve Out.

**L.     Intercreditor Agreements**.

29.    Pursuant to section 510 of the Bankruptcy Code, the Prepetition Intercreditor Agreements, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Secured Credit Documents (i) shall remain in full force and effect, and (ii) shall

continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including, for the avoidance of doubt, with respect to the Adequate Protection Collateral and Adequate Protection Liens).

**M.      Joint and Several Liability**.

30.      Nothing in this Interim Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

**N.      Cash Collateral Termination.**

31.      The Debtors' right to use the Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "Cash Collateral Termination Date") without further notice or court proceeding on the earliest to occur of (i) the date that is thirty-five (35) days after the entry of this Interim Order (unless such period is extended by mutual agreement of the ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, and the Debtors, which extension may be documented by email) if the Final Order has not been entered by this Court on or before such date (provided that such thirty-five (35)-day period shall be automatically extended to the extent it is not reasonably feasible to hold and conclude a final hearing (if necessary) prior to the expiration of such thirty-five day period as a result of the closure of the Court due to the events or circumstances surrounding the virus known as COVID-19 (the "Pandemic"), and the ABL Agent, the Required Revolving Lenders (as defined in the ABL Credit Agreement), the Term Loan Administrative Agent, and the Term Loan/First Lien Notes Collateral Agent shall be deemed to have automatically agreed to such extension); and (ii) the occurrence and continuation of any of the termination events set forth in **Annex 2** attached hereto

(each a "Cash Collateral Termination Event"), unless waived in writing by the ABL Agent, the Term Loan Administrative Agent, and the Term Loan/First Lien Notes Collateral Agent.

(a) **Remedies**.  Upon the Cash Collateral Termination Date.  Upon the occurrence or continuation of a Cash Collateral Termination Event, unless such Cash Collateral Termination Event has been waived in writing by the ABL Agent, the Term Loan Administrative Agent, and the Term Loan/First Lien Notes Collateral Agent, the ABL Agent, the Term Loan Administrative Agent, or the Term Loan/First Lien Notes Collateral Agent, may and any automatic stay, whether arising under section 362 of the Bankruptcy Code or otherwise is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the ABL Agent, the Term Loan Administrative Agent, or the Term Loan/First Lien Notes Collateral Agent to, upon the delivery of written notice (which may include electronic mail) to the counsel to the Debtors, counsel to any Official Committee (if appointed), and the U.S. Trustee (the "Remedies Notice Parties"): (i) terminate and/or revoke the Debtors' right under this Interim Order and the ABL Credit Documents to use any Cash Collateral of the ABL Lenders; (ii) freeze monies or balances in the Segregated Cash Collateral Account and any other accounts subject to a Control Agreement (as defined in the ABL Credit Agreement) or otherwise subject to a lien in favor of the ABL Agent pursuant to the terms of this Interim Order; (iii) take any act to create, validate, evidence, attach, or perfect any lien, security interest, right, or claim in the Collateral; and (iv) to take any action and exercise all rights and remedies provided to it by this Interim Order or applicable law; *provided* that prior to the exercise of any right in clauses (i)-(iv) of this paragraph, the ABL Agent shall be required to file a motion with the Court seeking emergency relief from the automatic stay (the "Stay Relief Motion") on at least five (5) business days' prior written notice to the Remedies Notice Parties of the ABL Agent's intent to exercise its rights and remedies (the "ABL Remedies Notice Period") and, during the ABL Remedies Notice Period, the Debtors can object to the termination of the consensual use of Cash Collateral on any basis and can seek the non-consensual use of Cash Collateral subject to the Prepetition Secured Parties' rights to object to, or otherwise oppose, any such non-consensual use and seek adequate protection in connection therewith; *provided*, that, notwithstanding anything herein to the contrary, the ABL Agent, the Term Loan Administrative Agent, or Term Loan/First Lien Notes Collateral Agent shall be required to file an emergency motion with the Court to terminate the stay or to file the written notice using a CM/ECF emergency event code.  With respect to any of the Debtors' leasehold locations, the ABL Agent's rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the ABL Agent; or (iii) which the ABL Agent has under applicable non-bankruptcy law.  Subject to the terms and conditions of this Interim Order, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Cash Collateral Termination Date; provided, however, that during the ABL Remedies Notice Period, the Debtors may use Cash Collateral solely in accordance with the terms and provisions of the Budget.

32.     So long as there are any ABL Obligations (including any ABL Adequate Protection Claim) outstanding and prior to the Payment in Full, in cash, of the ABL Obligations (including any ABL Adequate Protection Claim), in each case with respect to ABL Priority Collateral that is secured by Prepetition ABL Liens that in accordance with this Interim Order are senior to any liens held by Prepetition Secured Parties (other than the ABL Secured Parties), then with respect to such ABL Priority Collateral, such Prepetition Secured Parties (other than the ABL Secured Parties) shall: (i) have no right to and shall not take any action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Credit Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such ABL Priority Collateral, including in connection with the Adequate Protection Liens except to the extent required by an order of this Court; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such ABL Priority Collateral or proceeds thereof (until payment in full in cash of all ABL Obligations), to the extent such transfer, disposition, sale, or release is authorized under the applicable ABL Facility documents; and (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien, or similar instruments, or otherwise take any action to perfect their security interests in such ABL Priority Collateral unless, solely as to this clause (iii), any of the applicable ABL Secured Parties have filed financing statements or other documents to perfect the liens granted pursuant to this Interim Order or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or securities interests as of the Petition Date.

**O.     No Marshaling.**

33.     Subject to and pending entry of the Final Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Prepetition Collateral or Cash Collateral and all proceeds shall be received and

applied in accordance with this Interim Order and the Prepetition Secured Credit Documents, as applicable, subject to the Prepetition Intercreditor Agreements.

**P.      Lifting of Automatic Stay.**

34.     The automatic stay under section 362 of the Bankruptcy Code is hereby deemed modified and vacated to the extent necessary to (i) permit the Debtors to grant and (as applicable) perfect the Adequate Protection Liens and the Adequate Protection Claims and to incur all liabilities and obligations under this Interim Order, and (ii) authorize the Prepetition Secured Parties to retain and apply any applicable payments hereunder; *provided* that during the ABL Remedies Notice Period, unless otherwise ordered by the Court, the automatic stay under section 362 of the Bankruptcy Code shall remain in effect to the extent provided herein.

**Q.      Limitation on Charging Expenses Against Collateral.**

35.     Subject to and pending entry of the Final Order, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Prepetition Collateral, including Cash Collateral pursuant to sections 105(a) or 506(c) of the Bankruptcy Code or any similar principle of law or equity, without the prior written consent of the affected party (e-mail shall suffice), and no such consent shall be implied from any other action, inaction, or acquiescence by the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or any of the Prepetition Secured Parties.

**R.      Payments Free and Clear.**

36.     Subject and subordinate to the Carve Out, any and all payments or proceeds remitted to the Prepetition Secured Parties pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable (subject to sections X and Y of this Interim Order), received free and clear of any claim, charge, assessment or other liability, including

without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b) of the Bankruptcy Code.

**S.      Section 552(b) of the Bankruptcy Code.**

37.      Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and pending entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties.

**T.      All Parties' Reservation of Rights.**

38.      All parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Prepetition Secured Parties is not allowed under section 506(b) of the Bankruptcy Code and not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Credit Documents.

**U.      Reservation of Rights of the Prepetition Secured Parties.**

39.      Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Nothing herein shall be deemed to waive, modify or otherwise impair the respective rights of the Prepetition Secured Parties under the Prepetition Secured Credit Documents, the Prepetition Intercreditor Agreements, or under equity or law, and the Prepetition Secured Parties expressly reserve all of their respective

rights and remedies whether now existing or hereafter arising under the Prepetition Secured Credit Documents and/or equity or law in connection with all Events of Default (as defined in each applicable Credit Agreement, and whether arising prior to or after the Petition Date).

**V.     Perfection of Adequate Protection Liens.**

40.     The ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, and the Second Lien Notes Indenture Trustee are each hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee, shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Interim Order. If the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee determines to file any financing statements, notice of liens or similar instruments, the Debtors will cooperate and assist in any such filings as reasonably requested by the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee, as applicable, and the automatic stay shall be modified to allow such filings.

41.     A certified copy of this Interim Order may, in the discretion of the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording; *provided*, *however*, that

the Debtors shall reimburse the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, the Second Lien Notes Indenture Trustee or their respective designees for the payment of any stamp, intangibles, recording or similar tax.

**W.   Preservation of Rights Granted Under this Interim Order.**

42.     Except as expressly provided in this Interim Order (including with respect to the Carve Out), no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the ABL Agent, the Term Loan/First Lien Notes Collateral Agent and the Prepetition Secured Parties shall be granted or allowed, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than the Carve Out).

43.     Notwithstanding any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise entered at any time, (x) the Adequate Protection Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been paid and satisfied in full in cash (and such Adequate Protection Claims, the other administrative claims granted pursuant to this Interim Order and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

44.     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect: (i) the validity,

priority or enforceability of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee of the effective date of such reversal, stay, modification or vacatur; or (ii) the validity, priority or enforceability of the Adequate Protection Liens. Notwithstanding any such reversal, stay, modification or vacatur, any use of the Prepetition Collateral or any Adequate Protection Obligations incurred by the Debtors hereunder, as the case may be, prior to the actual receipt of written notice by the Administrative Agent, of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) of the Bankruptcy Code with respect to all uses of the Prepetition Collateral and all Adequate Protection Obligations.

45.     Subject to sections X and Y of this Interim Order, the adequate protection payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

46.     Except as expressly provided in this Interim Order, the Adequate Protection Obligations, the Adequate Protection Claims and the Adequate Protection Liens and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining Adequate Protection Obligations.  The

terms and provisions of this Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Claims, the other administrative claims granted pursuant to this Interim Order, and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order shall continue in full force and effect until all Adequate Protection Obligations are indefeasibly paid in full in cash.

## X.      Effect of Stipulations on Third Parties.

47.      Subject to the Challenge Deadline (as defined below), the stipulations, admissions, agreements, and releases contained in this Interim Order, including, without limitation, in section D of this Interim Order (collectively, the "Stipulations"), shall be binding upon the Prepetition Secured Parties and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors in the Chapter 11 Cases or any Successor Cases) in all circumstances and for all purposes.  The Stipulations shall be binding upon all other parties in interest (including without limitation, any Official Committee, if appointed) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances and for all purposes, unless (1) an Official Committee, if any, or a party in interest (in each case, to the extent requisite standing is obtained pursuant to an order of this Court entered prior to the Challenge Deadline (as defined below)), has timely and duly filed an adversary proceeding or contested matter under the Bankruptcy Rules (subject to the limitations contained herein) (each, a "Challenge Proceeding") by the Challenge Deadline, objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Secured Credit Documents, or otherwise asserting or prosecuting any Avoidance Action or any other claim, counterclaim, cause of action, objection, contest, defense or other challenge (a "Challenge") against any of the Prepetition Secured Parties

or any of their respective affiliates, subsidiaries, officers, directors, managers, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and the respective successors and assigns thereof (in each case, in their respective capacities as such), arising under, in connection with or related to the Debtors, the Prepetition Secured Obligations, the Prepetition Liens, or the Prepetition Secured Credit Documents, and (2) there is entered a final non appealable order in favor of the plaintiff in any such timely filed Challenge Proceeding; provided that (i) as to the Debtors, any and all such challenges are hereby irrevocably waived and relinquished as of the Petition Date and (ii) any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such Challenge (and any Challenges not so specified prior to the Challenge Deadline shall be deemed forever, waived, released and barred).

48.     If no such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, then, without further notice to any person or entity or order of the Court, (a) the Stipulations shall be binding on all parties in interest (including, without limitation, any Official Committee, if appointed); (b) the Prepetition Secured Obligations shall constitute allowed claims and shall not be subject to any defense, claim, counterclaim, recharacterization, subordination, disgorgement, offset, avoidance, for all purposes in these Chapter 11 Cases and any Successor Cases; (c) the Prepetition Secured Credit Documents shall be deemed to have been valid, as of the Petition Date, and enforceable against each of the Debtors in the Chapter 11 Cases and any Successor Cases; (d) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance, or other defense; and (e) the Prepetition Secured Obligations, the Prepetition Liens and the Prepetition Secured Credit Documents shall not be subject to any other or further claim or Challenge by any Official Committee (if appointed), any non-statutory

committees appointed or formed in these Chapter 11 Cases or any Successor Cases or any other party in interest, whether acting or seeking to act on behalf of the Debtors' estates or otherwise.

49.     If any such Challenge Proceeding is timely and properly filed prior to the Challenge Deadline, the Stipulations shall nonetheless remain binding and preclusive (as provided in section Z hereof) on any Official Committee (if appointed) and on any other person or entity, except to the extent that such Stipulations were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.

50.     The "Challenge Deadline" shall mean the date that is (A) the later of (i) 75 calendar days after entry of this Interim Order, or (ii) 60 days after formation of an Official Committee (if appointed), (B) such later date that has been agreed to in writing, prior to the expiration of the deadline to commence a Challenge, or (C) any such later date as has been ordered by the Court for cause upon a motion filed and served prior to the expiration of the deadline to commence a Challenge, upon (i) with respect to the ABL Facility, the ABL Agent (at the direction of the Required Revolving Lenders (as defined in the ABL Credit Agreement)), (ii) with respect to the Term Loan Agreement, the Term Loan Administrative Agent, (iii) with respect to the First Lien Notes Indenture, the First Lien Notes Indenture Trustee, and (iv) with respect to the Second Lien Notes, the Second Lien Notes Indenture Trustee.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Official Committee (if appointed) or any non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

**Y.     Limitation on Use of Collateral.**

51.     Notwithstanding anything contained in this Interim Order, or any other order of the Court to the contrary, no Prepetition Collateral, Cash Collateral, proceeds of any of the

foregoing, any portion of the Carve Out, or any other cash or funds may be used, directly or indirectly, by any of the Debtors, any Official Committee (if appointed), or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (a) to object to, contest, prevent, hinder, delay, or interfere with, in any way, the Prepetition Secured Parties' enforcement or realization upon any of Prepetition Collateral, or Cash Collateral; or (b) to investigate (including by way of examinations or discovery proceedings, whether formal or informal), prepare assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, against any of the Releasees with respect to any transaction, occurrence, omission, action, or other matter arising under, in connection with, or related to this Interim Order, the Prepetition Liens, the Prepetition Secured Obligations, or the Prepetition Secured Credit Documents or the transactions contemplated therein or thereby, including, without limitation, (A) upon entry of the Final Order only, any Avoidance Actions Proceeds, (B) any so-called "lender liability" claims and Causes of Action, (C) any claim or Cause of Action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the Prepetition Liens, the Adequate Protection Liens, the Adequate Protection Claims, or the Prepetition Secured Obligations, (D) any claim or Cause of Action seeking to challenge, invalidate, modify, set aside, avoid, marshal, subordinate, or recharacterize in whole or in part, the Prepetition Collateral, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Claims, or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to the Prepetition Secured Parties under any

of the Prepetition Secured Credit Documents in each case, including, without limitation, claims, proceedings, or actions that might prevent, hinder, or delay any of the Prepetition Secured Parties' assertions, enforcements, realizations, or remedies on or against the Prepetition Collateral or Adequate Protection Collateral in accordance with the applicable Prepetition Secured Credit Documents and this Interim Order and/or the Final Order (as applicable); *provided* that no more than $100,000 may be used for allowed fees and expenses incurred solely by any Official Committee (if appointed) in investigating, but not objecting to, challenging, litigating, opposing, prosecuting, or seeking to subordinate or recharacterize the validity, enforceability, perfection, and priority of the Prepetition Liens, the Prepetition Secured Obligations or the Prepetition Secured Credit Documents prior to the Challenge Deadline (as defined below).  Except to the extent expressly permitted by the terms of this Interim Order, none of the Debtors, any Official Committee (if appointed), or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity may use or seek to use Cash Collateral or, to sell, or otherwise dispose of Prepetition Collateral, in each case, without the consent of the ABL Agent, with respect to ABL Priority Collateral.

**Z.**     **Binding Effect; Successors and Assigns.**

52.      The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including without limitation, the Prepetition Secured Parties and the Debtors and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the each of the Prepetition Secured Parties and the Debtors and their respective successors and assigns, *provided* that, except to the extent expressly set forth in this

Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral or extend any financing to any Trustee or similar responsible person appointed for the estate of any Debtor. For all adequate protection and stay relief purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of this Interim Order.

**AA.**   **Limitation of Liability.**

53.    In permitting the use of the Prepetition Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, subject to entry of the Final Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, the Second Lien Notes Indenture Trustee or the other Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

**BB.**   **No Modification or Stay of This Interim Order**.

54. Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Interim Order or any term hereunder or thereunder, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2), or (c) the dismissal or conversion of one or more of the Cases (each, a "Subject Event"), (x) the acts taken by each of the Prepetition Secured Parties in accordance with this Interim Order, and (y) the Adequate Protection Obligations incurred or arising prior to the Prepetition Secured Parties' receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in

all respects by the original provisions of this Interim Order, and the acts taken by Prepetition Secured Parties in accordance with this Interim Order, and the liens granted to the Prepetition Secured Parties in the Collateral, and all other rights, remedies, privileges, and benefits in favor of the Prepetition Secured Parties pursuant to this Interim Order shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Interim Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Interim Order by this Court or any other tribunal.

**CC.    Power to Waive Rights; Duties to Third Parties.**

55.    ABL Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order that are in favor of ABL Agent and ABL Secured Parties (the "Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Lender Right(s).  Any waiver by ABL Agent of any Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Lender Right shall neither constitute a waiver of such Lender Right, subject ABL Agent or any Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to ABL Agent or any ABL Secured Party.

**DD.            Disposition of Collateral.**

56.    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the ABL Priority Collateral outside the ordinary course of business, without (x) the prior written consent of the ABL Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the ABL Agent or any Prepetition Secured Parties) or (y) an order of this Court.

**EE.**    **Reclamation Claims.**

57.    The Debtors shall not, without the consent of the ABL Agent, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise if, after giving effect to any such agreement, the aggregate amount applied to prepetition indebtedness subject to all such agreements since the Petition Date would exceed $1,000,000.

**FF.**    **Right of Setoff.**

58.    To the extent any funds were on deposit with ABL Agent as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with ABL Agent or any ABL Secured Party immediately prior to the filing of the Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff (and approval of the Bankruptcy Court).  By virtue of such setoff rights, as limited herein, the Deposited Funds are subject to a lien in favor of ABL Agent or the applicable ABL Secured Parties pursuant to §§ 506(a) and 553 of the Bankruptcy Code.

**GG.**    **Effectiveness.**

59.    This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of execution of effectiveness of this Interim Order.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be so deemed and vice versa.

**HH.    Bankruptcy Rules**.

60.    The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

**II.    Proofs of Claim.**

61.    None of the Prepetition Secured Parties will be required to file proofs of claim in any of the Cases or successor cases, and the Debtors' stipulations in section D of this Interim Order shall be deemed to constitute a timely filed proof of claim.  Any order entered by this Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in any of the Cases or successor cases shall not apply to the Prepetition Secured Parties with respect to the Prepetition Secured Credit Obligations.  Notwithstanding the foregoing, the ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee on behalf of itself and the applicable Prepetition Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a single master proof of claim in the Cases for any claims arising under the applicable Credit Agreements and hereunder (the "Master Proof of Claim").  Any Master Proof of Claim filed by the ABL Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.  The Master Proof of Claim, if filed, shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The Master Proof of Claim, if filed, shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the

applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the ABL Agent, the Term Loan Administrative Agent, the Term Loan/First Lien Notes Collateral Agent, or the Second Lien Notes Indenture Trustee. The provisions of this paragraph 61 and the Master Proof of Claim are intended solely for the purpose of administrative convenience.

**JJ.  Final Hearing.**

62.    The Final Hearing is scheduled for [____], 2020 at [____], prevailing Central time, before this Court, subject to any procedures or rules implemented by the Court in connection with the Pandemic.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court.  Any party in interest objecting to the relief sought at the Final Hearing shall file written objections on the Court's docket no later than [____], 2020 at 4:00 p.m., prevailing Central time.

**KK.  Jurisdiction.**

63.    This Court shall retain jurisdiction to enforce the terms of this Interim Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order.

**LL.  Controlling Effect of Interim Order.**

64.    To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control to the extent of such conflict.

Dated: _____, 2020
Houston, Texas

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Annex 1: Budget</u>**

**J.C. Penney Company, Inc.**
**Weekly Cash Flow**
**As of May 15, 2020**
(US $ MMs)

| | Actual / Forecast | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F | F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fiscal Month | May | May | Jun | Jun | Jun | Jun | Jul | Jul | Jul | Jul | Aug | Aug | Aug | Aug | Aug | Sep | Sep | Sep | Sep | Sep |
| | Year | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 | FY20 |
| | Week Ending | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun | 27-Jun | 4-Jul | 11-Jul | 18-Jul | 25-Jul | 1-Aug | 8-Aug | 15-Aug | 22-Aug | 29-Aug | 5-Sep | 12-Sep | 19-Sep | 26-Sep | 3-Oct |
| | Net Sales | $35 | $41 | $45 | $48 | $44 | $47 | $64 | $91 | $87 | $100 | $111 | $177 | $164 | $138 | $119 | $124 | $112 | $104 | $105 | $97 |
| **Collections & Disbursements** | | | | | | | | | | | | | | | | | | | | | |
| **Cash Receipts** | | | | | | | | | | | | | | | | | | | | | |
| 1 | Sales Receipts | 36 | 41 | 47 | 50 | 48 | 49 | 63 | 87 | 93 | 102 | 114 | 166 | 178 | 155 | 133 | 130 | 123 | 113 | 110 | 106 |
| 2 | Other Receipts | 3 | 3 | 3 | 3 | 3 | 4 | 3 | 3 | 3 | 22 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 22 | 4 |
| **Total Collections** | | 39 | 44 | 50 | 53 | 51 | 53 | 66 | 90 | 96 | 124 | 117 | 170 | 182 | 159 | 137 | 134 | 127 | 117 | 132 | 110 |
| **Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | |
| 3 | Domestic Merchandise Vendor | (21) | (18) | (17) | (34) | (24) | (18) | (21) | (55) | (35) | (28) | (38) | (73) | (47) | (44) | (36) | (46) | (15) | (73) | (66) | (63) |
| 4 | Import Merchandise Vendor | (6) | (5) | (5) | (10) | (7) | (5) | (6) | (22) | (14) | (11) | (16) | (28) | (18) | (17) | (14) | (17) | (26) | (24) | (21) | (27) |
| 5 | Sales Tax | - | (7) | - | - | - | (11) | - | - | - | (12) | - | - | - | - | (23) | - | - | - | (42) | - |
| 6 | Freight, Duty, and Broker | (13) | (2) | (2) | (4) | (3) | (7) | (2) | (7) | (4) | (12) | (5) | (9) | (6) | (5) | (18) | (5) | (19) | (8) | (20) | (20) |
| 7 | Payroll and Benefits | (6) | (26) | (8) | (24) | (7) | (24) | (6) | (33) | (10) | (23) | (26) | (24) | (32) | (47) | (35) | (25) | (35) | (23) | (38) | (23) |
| 8 | Occupancy | (8) | (8) | (7) | (18) | (8) | (5) | (20) | (25) | (8) | (3) | (24) | (8) | (22) | (4) | (6) | (22) | (19) | (8) | (4) | (21) |
| 9 | Non-Marketing Operating (NFR) | (9) | (8) | (7) | (16) | (10) | (7) | (7) | (11) | (13) | (10) | (17) | (16) | (21) | (11) | (12) | (30) | (10) | (14) | (19) | (12) |
| 10 | Marketing | (6) | (11) | (6) | (9) | (9) | (9) | (10) | (13) | (13) | (13) | (13) | (9) | (9) | (8) | (8) | (7) | (8) | (8) | (8) | (7) |
| 11 | Other | (3) | (3) | (3) | (3) | (3) | (3) | (7) | (3) | (5) | (3) | (6) | (3) | (7) | (3) | (8) | (3) | (9) | (3) | (8) | (31) |
| **Total Operating Disbursements** | | (71) | (88) | (74) | (116) | (70) | (88) | (79) | (169) | (102) | (114) | (143) | (170) | (161) | (139) | (160) | (155) | (129) | (160) | (226) | (193) |
| **Non-Operating Disbursements** | | | | | | | | | | | | | | | | | | | | | |
| 12 | Debt Service and Fees | (1) | (1) | (1) | (1) | (1) | (1) | (12) | (10) | (1) | (1) | (22) | (19) | (1) | (1) | (15) | (1) | (1) | (12) | (4) | (15) |
| 13 | Restructuring Professionals | - | - | - | (1) | - | - | (1) | (13) | - | (1) | (1) | (11) | - | - | - | (1) | (1) | - | (6) | - |
| 14 | Other Non-Operating | (1) | (1) | (1) | (2) | (2) | (2) | (2) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) |
| **Total Non-Operating Disbursements** | | (1) | (1) | (7) | (4) | (3) | (3) | (14) | (13) | (15) | (2) | (3) | (25) | (30) | (2) | (2) | (16) | (2) | (14) | (12) | (17) |
| **Net Cash Flow** | | $(34) | $(45) | $(32) | $(67) | $(21) | $(38) | $(27) | $(91) | $(21) | 8 | $(28) | $(25) | $(9) | 19 | $(25) | $(38) | $(5) | $(57) | $(105) | $(100) |
| **Liquidity** | | | | | | | | | | | | | | | | | | | | | |
| **Book Cash Position** | | | | | | | | | | | | | | | | | | | | | |
| 15 | Book Cash - Beginning | 475 | 441 | 396 | 589 | 522 | 501 | 463 | 435 | 344 | 548 | 556 | 527 | 503 | 494 | 512 | 488 | 450 | 445 | 388 | 283 |
| 16 | Plus: Net Cash Flow | (34) | (45) | (32) | (67) | (21) | (38) | (27) | (91) | (21) | 8 | (28) | (25) | (9) | 19 | (25) | (38) | (5) | (57) | (105) | (100) |
| 17 | Plus: Revolver Draw/(Paydown) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 18 | Plus: DIP Draw/(Paydown) | - | - | 225 | - | - | - | - | - | 225 | - | - | - | - | - | - | - | - | - | - | - |
| **Book Cash - Ending** | | 441 | 396 | 589 | 522 | 501 | 463 | 435 | 344 | 548 | 556 | 527 | 503 | 494 | 512 | 488 | 450 | 445 | 388 | 283 | 183 |
| 19 | Prof Fee Carveout Escrow | - | - | (16) | (16) | (16) | (16) | (38) | (37) | (27) | (27) | (27) | (40) | (31) | (31) | (31) | (47) | (47) | (37) | (30) | (17) |
| 20 | Posted ABL Cash Collateral / Cash Collateral L/C | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (17) | - | - | - | - |
| **Unrestricted Book Cash - Ending** | | $441 | $396 | $573 | $506 | $485 | $447 | $398 | $307 | $521 | $529 | $500 | $463 | $462 | $481 | $456 | $386 | $398 | $351 | $252 | $166 |
| | Intra-Month Minimum | 396 | 396 | 396 | 398 | 398 | 398 | 398 | 307 | 307 | 307 | 307 | 386 | 386 | 386 | 386 | 386 | 166 | 166 | 166 | 166 |
| **Pre-Petition ABL Borrowing Base and Availability** | | | | | | | | | | | | | | | | | | | | | |
| 21 | Effective Borrowing Base | 1,620 | 1,627 | 1,629 | 1,623 | 1,637 | 1,640 | 1,638 | 1,635 | 1,655 | 1,644 | 1,622 | 1,606 | 1,606 | 1,560 | 1,522 | 1,488 | 1,593 | 1,611 | 1,628 | 1,636 |
| 22 | Less: Outstanding ABL Draws | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) | (1,180) |
| 23 | Less: Letters of Credit | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) | (213) |
| **Subtotal** | | 227 | 234 | 236 | 229 | 243 | 247 | 245 | 242 | 261 | 251 | 228 | 212 | 212 | 166 | 128 | 95 | 200 | 217 | 234 | 242 |
| 24 | Less: Pre-Petition Minimum Excess Availability | (162) | (163) | (163) | (162) | (164) | (164) | (164) | (164) | (165) | (164) | (162) | (161) | (120) | (117) | (114) | (112) | (120) | (121) | (122) | (123) |
| 25 | Plus: Posted ABL Cash Collateral | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 17 | - | - | - | - |
| **Total** | | 65 | 71 | 73 | 67 | 80 | 83 | 81 | 78 | 96 | 86 | 66 | 52 | 92 | 49 | 14 | 0 | 80 | 96 | 112 | 119 |

### Annex 2: Cash Collateral Termination Events

Any of the following shall constitute a Cash Collateral Termination Event:

(a)     Cross-default to any material prepetition indebtedness that is not stayed by the automatic stay in the Chapter 11 Cases;

(b)     An order shall be entered reversed, adversely amending, adversely supplementing, staying, vacating or otherwise adversely modifying any material provisions of this Interim Order without the written agreement of the ABL Agent, the Term Loan Administrative Agent, and the Term Loan/First Lien Notes Collateral Agent;

(c)     The Interim Order shall cease to be in full force and effect or shall have been reversed, modified, amended, stayed, vacated or subject to stay pending appeal, in the case of any modification or amendment (other than entry of the Final Order);

(d)     The Court shall have entered an order dismissing any of the Chapter 11 Cases absent consent of the Prepetition Secured Parties;

(e)     The Court shall have entered an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, unless the ABL Agent has consented to such order in writing;

(f)     The Court shall have entered an order authorizing the appointment or election of a trustee or examiner with expanded powers or any other representative with expanded powers relating to the operation of the businesses in the Chapter 11 Cases, unless consented to in writing by the ABL Agent;

(g)     The Court shall have entered an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the ABL Agent or any of the ABL Secured Parties, the Term Loan Administrative Agent or any of the Term Loan Secured Parties, the First Lien Notes Indenture or any First Lien Notes Secured Parties, or the Term Loan/First Lien Notes Collateral Agent, the First Lien Notes Indenture Trustee or any First Lien Notes Secured Party, or the Second Lien Notes Indenture Trustee or any Second Lien Notes Secured Party with respect to any material Prepetition Collateral or Cash Collateral without the written consent of the ABL Agent, which consent may be withheld by each in its sole discretion;

(h)     A filing by any Debtor of any motion, pleading, application or adversary proceeding challenging the validity, enforceability, perfection or priority of the liens securing the ABL Credit Facility or asserting any other cause of action against and/or with respect to the ABL Credit Facility, the Prepetition

Collateral, or the ABL Agent, any of the ABL Secured Parties (or if the Debtors support any such motion, pleading, application or adversary proceeding commenced by any third party);

(i)    The Debtors shall use Cash Collateral in any manner inconsistent with the terms of this Interim Order, including, without limitation, section G of the Interim Order; or the Court shall have entered an order avoiding, disallowing, subordinating or recharacterizing any claim, lien, or interest held by any Prepetition Secured Party arising under the ABL Credit Agreement, unless (i) the Debtors have sought a stay of such order within five (5) business days after the date of such issuance, and such order is stayed, reversed or vacated within ten (10) business days after the date of such issuance or (ii) the ABL Agent has consented to such order in writing;

(j)    the Debtors' fail to satisfy any Milestone (as defined on Annex 3 attached hereto);

(k)    the Debtors shall fail to pay, when due, any payment required to be made pursuant to paragraph 16(a) of this Interim Order and such failure to pay shall not have been waived by the ABL Agent;

(l)    a period of at least five business days shall have elapsed, following the entry of the DIP Order, during and after the conclusion of which, the Debtors shall have failed to satisfy the "Conditions Precedent to Initial Borrowing" and such conditions shall not have been waived

(m)    The Debtors shall use or propose to use the Cash Collateral or the proceeds of the Cash Collateral to pursue any claim or Cause of Action against the ABL Secured Parties or to cause a Challenge to the Prepetition ABL Liens or to seek to prosecute a plan of reorganization that fails to satisfy the ABL Obligations in full in cash, unless consented to in writing by the ABL Agent.; and/or

(n)    solely to the extent that (x) a Budget Covenant Default (as defined below) has occurred and constitutes an "Event of Default" under the DIP Financing and (y) the DIP Lenders shall not have (i) waived such Budget Covenant Default (as defined below) (or any related event of default), (ii) permitted the Debtors to cure such Budget Covenant Default (as defined below) (or any related event of default) or (iii) amended or modified terms or provisions of the DIP Financing such that such Budget Covenant Default (as defined below) (or any related event of default) shall not have occurred or shall no longer be continuing under the then current terms of the DIP Financing, a period of five business days shall have passed after the date on which a Budget Covenant Default (as defined below) has occurred.  For all purposes, "Budget Covenant Default" shall mean (x) the DIP Borrower's (as defined in the DIP Financing) cumulative actual receipts shall be less than 85% of budgeted receipts for the corresponding test period, (y) the DIP

Borrower's (as defined in the DIP Financing) cumulative actual disbursements (excluding professional fees) shall be more than 12.5% greater than budgeted disbursements for the corresponding test period or (z) the DIP Borrower's (as defined in the DIP Term Sheet) cumulative actual disbursements to merchandise vendors will not be more than 10% greater than the budgeted disbursements for the corresponding test period, in each case for the same periods for which such variance tests are tested under the DIP Financing (which variance tests, for the avoidance of doubt, shall be tested solely to the extent so tested in the DIP Financing); *provided,* that the definition of "Budget Covenant Default" shall be deemed amended and modified to the extent the Budget Variances or the corresponding provisions of the section entitled "Other Maintenance Covenants" is so modified in the DIP Financing (including, without limitation, in the event that the Debtors are able to more rapidly open store locations than anticipated in the initial Budget). For the avoidance of doubt, the ABL Agent shall not have any consent right over any updates or adjustments to the Budget (including, without limitation, to the extent utilized for calculating whether any Budget Covenant Default shall exist); and/or

(o)     any Debtor's failure to perform, in any respect, any of its material obligations under this Interim Order.

**Annex 3: Milestones**

On the Petition Date, the Debtors shall have filed a motion, in form and substance acceptable to ABL Agent, seeking approval of a post-petition DIP financing facility on an interim and final basis;

(a) On or before June 2, 2020, the DIP Order, in form and substance acceptable to ABL Agent, shall have been entered by the Bankruptcy Court;

(b) On or before the day that is 18 calendar days after the Petition Date, the Bankruptcy Court shall enter an order, in form and substance satisfactory to the ABL Agent, approving the DIP Credit Agreement and DIP Facility, in each case in form and substance satisfactory to the ABL Agent, on a final basis;

(c) On or before July 15, 2020, the Debtors shall have either (i) delivered evidence in form and substance acceptable to ABL Agent that no less than 66.7% of the DIP Lenders have approved the Business Plan or (ii)(A) filed a motion seeking approval of bidding procedures and a sale, in each case that is in form and substance acceptable to the ABL Agent, and (B) delivered and updated Budget to ABL Agent in form and substance acceptable to ABL Agent, which Budget shall replace the Budget then in effect;

(d) On or before the day that is 90 days after the Petition Date, the Debtors will have filed either (A) a motion seeking approval of a disclosure statement with respect to a chapter 11 plan, in form and substance that is acceptable to the ABL Agent, or (B) a motion seeking approval of bidding procedures and a sale, in each case that is in form and substance acceptable to the ABL Agent;

(e) On or before the day that is 130 days after the Petition Date, the Bankruptcy Court shall have entered an order in form and substance acceptable to the ABL Agent either approving (A) an acceptable disclosure statement or (B) acceptable bidding procedures;

(f) On or before the day that is 160 days after the Petition Date, the Bankruptcy Court shall have entered one or more orders, in each case in form and substance acceptable to the ABL Agent, either (A) confirming an acceptable chapter 11 plan or (B) approving an acceptable sale or sales.