IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| J. C. PENNEY COMPANY, INC., *et al.*,[1] | ) ) ) | Case No. 20-20182 (DRJ) |
| Debtors. | ) ) ) | (Jointly Administered) (Emergency Hearing Requested) |

### DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER APPROVING PROCEDURES TO PAY FEES AND EXPENSES OF POTENTIAL INVESTORS IN CONNECTION WITH THE MARKET TEST

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 2, 2020, AT 3:00 P.M. (CENTRAL TIME) AT UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 1133 N. SHORELINE BLVD, CORPUS CHRISTI, TEXAS 78401. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN JUNE 2, 2020.**
>
> **PLEASE NOTE THAT ON MARCH 24, 2020, THROUGH THE ENTRY OF GENERAL ORDER 2020-10, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS.**
>
> **IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1(832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE JONES' CONFERENCE ROOM NUMBER IS 205691.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**
>
> **ONCE CONNECTED TO WWW.JOIN.ME, A PARTICIPANT MUST SELECT "JOIN A MEETING". THE CODE FOR JOINING THIS HEARING BEFORE JUDGE JONES IS "JUDGEJONES". THE NEXT SCREEN WILL HAVE A PLACE FOR THE PARTICIPANT'S NAME IN THE LOWER LEFT CORNER. PLEASE COMPLETE THE NAME AND CLICK "NOTIFY".**
>
> **HEARING APPEARANCES SHOULD BE MADE ELECTRONICALLY AND IN ADVANCE OF THE HEARING. YOU MAY MAKE YOUR ELECTRONIC APPEARANCE BY:**
>
> **1) GOING TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE;**
>
> **2) SELECTING "BANKRUPTCY COURT" FROM THE TOP MENU;**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://cases.primeclerk.com/JCPenney. The location of Debtor J. C. Penney Company, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Plano, Texas 75024.

> **3) SELECTING JUDGES' PROCEDURES AND SCHEDULES;**
>
> **4) SELECTING "VIEW HOME PAGE" FOR JUDGE DAVID R. JONES;**
>
> **5) UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE;"**
>
> **6) SELECT J. C. PENNEY COMPANY, INC., ET AL. FROM THE LIST OF ELECTRONIC APPEARANCE LINKS, AND**
>
> **7) AFTER SELECTING J. C. PENNEY COMPANY, INC., ET AL. FROM THE LIST, COMPLETE THE REQUIRED FIELDS AND HIT THE "SUBMIT" BUTTON AT THE BOTTOM OF THE PAGE.**
>
> **SUBMITTING YOUR APPEARANCE ELECTRONICALLY IN ADVANCE OF THE HEARING WILL NEGATE THE NEED TO MAKE AN APPEARANCE ON THE RECORD AT THE HEARING**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion (this "<u>Motion</u>"):

## Preliminary Statement

1. The Restructuring Support Agreement filed on the Petition Date (the "<u>RSA</u>"),[2] which is supported by approximately 70% of the First Lien Lenders, expressly contemplates a Market Test (as described below) in addition to the standalone plan option.

2. More specifically, the RSA calls for the Debtors to conduct a robust process (the "<u>Market Test</u>") in which the Debtors solicit interest:

- from parties wishing to provide new money debt financing to New JCP and/or the REIT;

- in the sale or sale/leaseback of the Debtors' owned distribution centers;

- in the provision of new capital to New JCP and/or the REIT in exchange for equity in such entity;

- in the purchase of New JCP, the REIT, or substantially all of the assets of either as a going concern; and

- in the purchase of all or part of the Debtors' assets (any party demonstrating interest in any of the foregoing, a "<u>Potential Investor</u>").

---

[2] Terms used herein and not otherwise defined have the meaning ascribed to such term by the RSA.

2

3. The Debtors have continued to engage in extensive discussions surrounding the forgoing with several Potential Investors. And there is robust interest. But, because of concerns around process—specifically that the standalone plan will be pursued with the Market Test simply serving as a "check"—certain interested parties are hesitant to spend the significant resources necessary to meet admittedly aggressive deadlines. Thus, to truly maximize value and the possibility of a going concern for the benefit of all stakeholders, including 85,000 employees, the Debtors must request the ability to pay potential "work fees" and otherwise reimburse parties for their efforts in a compressed period of time.

4. More specifically, through this Motion, the Debtors seek relief, but not direction, to implement procedures (the "MT Payment Procedures") pursuant to which the Debtors may pay certain Potential Investors for their reasonable and documented fees and expenses in the aggregate amount not to exceed $3,000,000. The Debtors intend to use these funds for only the most serious participants in close coordination with their key stakeholders.

**Relief Requested**

5. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto authorizing, but not directing, the Debtors to implement procedures by which they may pay Potential Investors' for reasonable and documented work fees and expenses in connection with the Potential Investors' ongoing diligence up to an aggregate amount of $3,000,000.

**Jurisdiction and Venue**

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order.

3

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are sections 105(a), 363, and 503 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 2002 and 6004, and rule 4002-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

9. On May 15, 2020 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A detailed description of the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Bill Wafford, Executive Vice President, Chief Financial Officer of J. C. Penney Company, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 25] (the "First Day Declaration") filed on May 15, 2020 and incorporated by reference herein.

## MT Payment Procedures

10. The Debtors request that the Court approve the MT Payment Procedures set forth in the Order. The MT Payment Procedures establish a streamlined process for the payment of professional fees and expenses accrued during the Market Test by certain Potential Investors (such professionals, the "MT Professionals," and such fees and expenses, the "MT Professional Fees"). The MT Payment Procedures will permit the Debtors to pay the Potential Investor for reasonable and documented MT Professional Fees and will provide reporting to the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") and the professionals for any statutory committee of unsecured creditors.

11. Prior to incurring any MT Professional Fees for which a Potential Investor anticipates seeking payment, the Potential Investor must provide the Debtors with a notice of the anticipated payment request (email shall suffice) (each such request, a "Payment Request Notice"). The Payment Request Notice will include the estimated quantum of the MT Professional Fees, the

4

identity of the MT Professionals, and the scope of work intended to be undertaken by the MT Professionals.  If the Debtors determine in an exercise of their business judgment that payment for some or all of such costs is a valuable use of estate resources, they will respond to such Potential Investor, notifying such party of the Debtors' intent to provide payment, and provide the amount they deem reasonable and appropriate in their business judgment.  While these chapter 11 cases are pending, the Debtors may not provide payments in the aggregate amount exceeding $3,000,000.

12.   Beginning with the period ending on June 30, 2020, and in four-week increments (each four-week period, an "MT Period") thereafter, while these chapter 11 cases are pending, the Debtors shall serve on the Notice Parties,[3] no later than 5 business days after the conclusion of such MT Period, a statement describing each Potential Investor receiving funds pursuant to the MT Payment Procedures during the immediately preceding MT Period (the "MT Period Report").  Each MT Period Report shall include the following information:  (a) a description (but not the specific identity) of the Potential Investor being paid; (b) the aggregate amounts disbursed to that Potential Investor during the reported MT Period; and (c) all disbursements made to that Potential Investor to date pursuant to the MT Payment Procedures.  All information will be provided to the Notice Parties on a "professional eyes only" basis and will be considered strictly confidential.  The initial MT Period Report shall cover the period beginning on the Petition Date and ending June 30, 2020.

---

[3]   For purposes of this Motion and the Order, "Notice Parties" shall include:  (a) counsel to any statutory committee appointed in these chapter 11 cases; and (b) the U.S. Trustee for the Southern District of Texas, Attn.: Stephen Statham (stephen.statham@usdoj.gov) and Hector Duran, Jr. (hector.duran.jr@usdoj.gov).

25916433v.2 103910/00028

**Basis for Relief**

**I.     Payment for the MT Professional Fees are Fair, Designed to Maximize the Value Received for the Assets (if applicable), and are Consistent with the Debtors' Reasonable Business Judgment.**

13.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification.'") (internal citations omitted); *see also In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (explaining that courts usually defer to the trustee's "legitimate business justification" with respect to the "disposition of assets of the estate"); *In re Integrated Res., Inc.*, 147 B.R. 650, 656–57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

14.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res., Inc.*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

25916433v.2 103910/00028

15. The Debtors believe that the proposed MT Payment Procedures will promote active participation in the Market Test from earnestly interested parties and will elicit the highest or otherwise best offers available. The MT Payment Procedures will allow the Debtors to conduct the sale and marketing process in a controlled, fair, and open fashion and are designed to encourage participation by financially capable bidders who can demonstrate the ability to close a transaction. Specifically, the MT Payment Procedures contemplates a process by which to minimize barriers to entry and provide potentially interested parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

16. At the same time, the MT Payment Procedures provide the Debtors with an opportunity to receive as many competitive offers as reasonably possible. As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable at or above market.

17. The Debtors submit that the MT Payment Procedures will encourage a competitive Market Test, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings

18. Accordingly, for all of the foregoing reasons, the Debtors believe that the MT Payment Procedures: (a) will encourage robust bidding in the Market Test; and (b) are appropriate under the relevant standards governing bidding incentives in bankruptcy proceedings and should be approved.

## II. The Relief Sought in the Proposed Order is in the Best Interests of the Debtors' Estates and Should be Approved.

19. Under section 363(b) of the Bankruptcy Code, the Debtors "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1).

20.  Courts in the Fifth Circuit analyze the appropriateness of bidding incentives (including fee reimbursement) under the "business judgment rule" standard, and the law is well established in this district that courts consider whether (a) the incentive hampers, rather than encourages, bidding, and (b) the amount of the incentive is unreasonable relative to the proposed purchase price.  *See In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (affirming bankruptcy court's decision to apply the business judgment rule to evaluate whether an expense reimbursement bid protection was permissible); *see also In re ASARCO LLC*, 441 B.R. 813, 826 (S.D. Tex. 2010) (explaining three-part test used to determine whether expense reimbursement was permissible under business judgment rule); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 657-58 (S.D.N.Y. 1992) (to evaluate bid protections, courts should employ the business judgment rule, which proscribes judicial second-guessing of the corporate debtor's actions taken in good faith, absent self-dealing and in the exercise of honest judgment).

21.  Under this standard, the Debtors' requested authority to approve, in their reasonable business judgment, the MT Payment Procedures in these chapter 11 cases passes muster.  The Debtors recognize the significant expenditure of time, energy, and resources that go into preparing a bid for the Market Test, and that incentives in the form of payment for anticipated fees and expenses may encourage a Potential Investor to invest the requisite time, money, and effort to negotiate with the Debtors and perform the necessary due diligence attendant to the acquisition of the assets, despite the inherent risks and uncertainties of the chapter 11 process.  Moreover, any offer resulting from the Market Test would provide a floor with respect to the assets that it offers to purchase, and may encourage other Potential Investors to put their best offer forward and engage

with the Debtors in an effort to be chosen as the selected transaction counterparty. Any such increased competition would inure to the benefit of the Debtors' estates.

22. Fifth Circuit courts have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons. *See, e.g.*, *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Asarco, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011) *aff'g* 441 B.R. 813, 824 (S.D. Tex. 2010) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard."); *see also id.* (quoting *Cont'l Air Lines,* 780 F.2d at 1226) ("The business judgment standard in section 363 is flexible and encourages discretion. 'Whether the proffered business justification is sufficient depends on the case . . . . [T]he bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.'"); *In re new Millennium Management, LLC*, No. 13–35719–H3–7, 2014 WL 2949394 (Bankr. S.D. Tex. June 30, 2014).

23. Authority to offer payment for customary fees and expenses in accordance with the terms of the MT Payment Procedures reflects sound business purposes and is in the best interests of the Debtors, their estates, and all stakeholders, as the bids will establish a floor for further bidding that may increase the consideration given in exchange for the assets. For the reasons set forth above, the Debtors respectfully request authorization to implement the MT Payment Procedures to be utilized by the Debtors in their discretion.

9

**Notice**

24. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules, and is sufficient under the circumstances. The Debtors will provide notice to parties-in-interest, including: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) Otterbourg P.C., as counsel to Wells Fargo Bank, N.A., administrative agent under the Debtors' revolving credit facility; (d) JPMorgan Chase Bank, N.A., as administrative agent under the Debtors' term loan facility; (e) Wilmington Trust, N.A., as indenture trustee under the Debtors' (i) 5.875% first lien secured notes due 2023, (ii) 8.625% second lien secured notes due 2025, (iii) 5.65% unsecured notes due 2020, (iv) 7.125% unsecured notes due 2023, (v) 6.90% unsecured notes due 2026, (vi) 6.375% unsecured notes due 2036, (vii) 7.40% unsecured notes due 2037, and (viii) 7.625% unsecured notes due 2097; (f) Milbank LLP, as counsel to the ad hoc group of certain first lien creditors; (g) the United States Attorney's Office for the Southern District of Texas; (h) the Internal Revenue Service; (i) the United States Securities and Exchange Commission; (j) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (k) the state attorneys general for states in which the Debtors conduct business; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances

Respectfully Submitted,
May 26, 2020

/s/ *Matthew D. Cavenaugh*

| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
|---|---|
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Kristhy M. Peguero (TX Bar No. 24102776) | Christopher Marcus, P.C. (admitted *pro hac vice*) |
| Veronica A. Polnick (TX Bar No. 24079148) | Aparna Yenamandra (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 601 Lexington Avenue |
| Houston, Texas 77010 | New York, New York 10022 |
| Telephone: (713) 752-4200 | Telephone: (212) 446-4800 |
| Facsimile: (713) 752-4221 | Facsimile: (212) 446-4900 |
| Email: mcavenaugh@jw.com | Email: joshua.sussberg@kirkland.com |
| jwertz@jw.com | christopher.marcus@kirkland.com |
| kpeguero@jw.com | aparna.yenamandra@kirkland.com |
| vpolnick@jw.com | |

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on May 26, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

      */s/ Matthew D. Cavenaugh*
      Matthew D. Cavenaugh