Case No. 20-20184 (CML)
J. C. PENNEY DIRECT MARKETING SERVICES LLC, *st al*
Formerly jointly Administered under
J.C. Penney Company, Inc, 20-20182

TO THE HONORABLE JUDGE
    CHRISTOPHER M. LOPEZ
    UNITED STATES BANKRUPTCY JUDGE
    FOR THE SOUTHERN DISTRICT OF TEXAS
    CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
**FILED**

SEP 06 2024

Nathan Ochsner, Clerk of Court

TO THE HONORABLE US TRUSTEE
    KEVIN M. EPSTEIN
    UNITED STATES TRUSTEE REGION 7,
    SOUTHERN AND WESTERN DISTRICTS OF TEXAS

## Subject: Urgent Request to Reconsider Bankruptcy Proceedings in Light of Jarvis Precedent

Dear Honorable
    Judge Lopez,
    US Trustee Kevin Epstein,

    We, the minority ad-hoc group of first lien, second lien, unsecured bond, and equity holders who owned these instruments prior to the sales order dated November 9, 2020, respectfully submit this letter to request that the Court reconsider the bankruptcy proceedings of J.C. Penney in light of the precedent set in the Jarvis case.

**Application of Fair Market Value Standard**: The Jarvis precedent underscores the importance of utilizing fair market value rather than undervalued sales prices in bankruptcy proceedings. In Jarvis, the court emphasized that the use of fair market value is crucial to prevent the undervaluation of assets and to ensure that creditors receive a distribution that accurately reflects the true value of the debtor's estate. This approach promotes fairness and equity among all creditors, preventing any party from receiving a disproportionate share of the assets.

**Disproportionate Transfer of Assets**: During the hearing held on September 4, 2024, it was concluded that the transfer of Opco assets resulted in the DIP lender receiving $807 million of their $900 million DIP loan. Consequently, the DIP lender was compensated with PropCo assets valued at fair market value of $1.95 billion (as disclosed by KPMG at the time of PropCo's closing on January 30, 2021) for the remaining $93 million balance of their DIP loan consideration. This amounts to 2,100% of their DIP loan amount, representing an egregiously disproportionate transfer of assets that were owned and secured by liens held by J.C. Penney's creditors.

**Need for Reassessment**: In the J.C. Penney case, applying the fair market value standard would provide a more accurate reflection of the company's worth and ensure that creditors are treated fairly. **The significant discrepancy between the sale price of $93 million and the fair market value of $1.95 billion for PropCo highlights the need for a reassessment of the asset**

distribution. By considering the Jarvis precedent, the Court can ensure that the distribution of assets is conducted in a manner that is equitable and reflective of the true value of J.C. Penney's assets.

**Sales Order Assumptions When Secured and Unsecured Lien Holders Agreed to Support Judge Jones's Sales Order:**

The equitable distribution should have been reflected in the appropriate pro-rata calculated interest for the creditors of the old entity into the newly formed entity once the remaining balance of the DIP loan was paid out. This was the original intent of the sales order and was not intended to offer all the assets of PropCo and OpCo at the expense of the secured and unsecured lien holders. These lien holders did not agree to be wiped out without cause, as their assumption was always to receive a percentage interest in the order of priority in the newly formed entity once the DIP loan was paid off. It was widely known that the DIP draw was not even necessary to begin with, but it was orchestrated to ensure that the additional draw triggered the sales clause.

**Concerns About the Sales Process:** Additionally, we wish to highlight that Judge Jones's decision to aggressively push for the wrapping up of the sales process during the August 19, 2020, status conference raised serious concerns about his openness to consider the reorganization plan. His pre-determined goal of pushing a sale and his rationale for overruling the objections raised by the Equity Committee, when the debtor drew additional amounts of the DIP loan that forcefully triggered the sale, were not made in the interest of the creditors. These decisions were made despite the Equity Committee's arguments and financial details presented during the hearing, indicating that the draw was unnecessary. These actions were not in the best interest of the creditors who held secured and unsecured liens against J.C. Penney's assets and operations and were forced upon them under the guise of the bankruptcy process.

**Note:** We respectfully urge the Court to

- Publish the asset distribution calculations for Opco and Propco down to the exact dollar, rather than rounding to millions or billions, to ensure that every penny of the transaction is accounted for.
- We have also requested the US Trustee to conduct a formal audit of this distribution calculation to ensure fairness and accuracy.
- Additionally, we request an explanation from the Judge to clarify to the impacted creditors under which circumstances the Court believes the creditors would have been paid after the DIP loan was paid off. The payment was assumed to be in the form of prorate interest in the newly formed PropCo entity, given that Opco was sold to Simon and Brookfield properties.

We implore the Court to **not** take **the easy path** and dismiss the grievances of individuals who have lost their lifelong savings and retirement funds. Allowing the DIP lenders to profit from the bankruptcy process under the assumption that the courts lack the time and resources to oversee these complex procedures would enable them to defraud innocent investors of their hard-earned savings.

We earnestly urge the Court to consider the **Jarvis precedent** and the fair market value standard to ensure a just outcome for all parties involved. It is imperative that the distribution of assets is conducted in a manner that is equitable and reflective of the true value of J.C. Penney's assets, thereby upholding the integrity of the bankruptcy process.


Thank you for your time and consideration.
Sincerely,
Respectfully submitted,

THE AD HOC COMMITTEE OF
EQUITY INTEREST HOLDERS
    And representation from
AD HOC UNSECURED BOND HOLDERS
Email: **jcp_equity@outlook.com**